381 U.S. 741 (1965)
CAMERON ET AL.
v.
JOHNSON, GOVERNOR OF MISSISSIPPI, ET AL.
No. 587, Misc.
Supreme Court of United States.
Decided June 7, 1965.
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.
Arthur Kinoy, William M. Kunstler, Benjamin E. Smith, Bruce C. Waltzer, Melvin Wulf and Morton Stavis for appellants.
Joe T. Patterson, Attorney General of Mississippi, and William A. Allain, Assistant Attorney General, for appellees.
PER CURIAM.
Appellants brought this action, inter alia, under § 1979 of the Revised Statutes, 42 U. S. C. § 1983 (1958 ed.), to enjoin enforcement of the Mississippi Anti-Picketing statute,[*] on the grounds that it was an unconstitutionally broad regulation of speech, and that it was being applied for the purpose of discouraging appellants' civil rights activities.
The motion for leave to proceed in forma pauperis is granted. The judgment is vacated and the cause remanded for reconsideration in light of Dombrowski v. Pfister, 380 U. S. 479. On remand, the District Court should first consider whether 28 U. S. C. § 2283 (1958 ed.) bars a federal injunction in this case, see 380 U. S., at 484, n. 2. If § 2283 is not a bar, the court should then determine *742 whether relief is proper in light of the criteria set forth in Dombrowski.
MR. JUSTICE BLACK, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.
I dissent from the reversal of this judgment and from the manner in which it is done. A cryptic, uninformative per curiam order is no way, I think, for this Court to decide a case involving as this one does a State's power to make it an offense for people to obstruct public streets and highways and to block ingress and egress to and from its public buildings and properties. The case also involves the question whether, having passed such a law, valid on its face, the State can prosecute offenders in its own courts or whether United States courts have power to enjoin all state prosecutions merely because of a charge that the law is unconstitutional on its face, without first determining the constitutionality of the statute.
Every person who has the slightest information about what is going on in this country can understand the importance of these issues. The summary disposition the Court makes of this case fails properly to enlighten state or federal courts or the people who deserve to know what are the rights of the people, the rights of affected groups, the rights of the Federal Government, and the rights of the States in this field of activities which encompasses some of the most burning, pressing and important issues of our time. There are many earnest, honest, good people in this Nation who are entitled to know exactly how far they have a constitutional right to go in using the public streets to advocate causes they consider just. State officials are also entitled to the same information. The Court has already waited entirely too long, in my judgment, to perform its duty of clarifying these constitutional *743 issues.[1] These issues are of such great importance that I am of the opinion that before this Court relegates the States to the position of mere onlookers in struggles over their streets and the accesses to their public buildings, this Court should at least write an opinion making clear to the States and interested people the boundaries between what they can do in this field and what they cannot. Today's esoteric and more or less mysterious per curiam order gives no such information.
This action was brought by and on behalf of picketers and demonstrators in Mississippi, some of whom have charges now pending against them which were brought in the Mississippi state courts[2] for violating a Mississippi statute which provided:
"It shall be unlawful for any person, singly or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or interfere with free ingress or egress to and from any public premises, State property, county or municipal courthouses, city halls, office buildings, jails, or other *744 public buildings or property owned by the State of Mississippi or any county or municipal government located therein or with the transaction of public business or administration of justice therein or thereon conducted or so as to obstruct or interfere with free use of public streets, sidewalks or other public ways adjacent or contiguous thereto."[3]
Their complaint in the United States District Court asked that the Governor of Mississippi and other state officials be enjoined from enforcing the statute against them and others. The complaint alleged that the law was unconstitutional on its face and as applied to the plaintiffs and persons similarly situated because the language of the statute was so vague and ambiguous that a person of ordinary intelligence could not understand it, and so broad and sweeping in its terms that it could be used, had been used, and would be used, to harass and persecute the plaintiffs and others, not merely for blocking streets and doors and passageways, but also for simply picketing and demonstrating, activities which this statute does not prohibit.[4] They alleged in addition that the Mississippi Legislature actually passed the law to discourage picketers and demonstrators from protesting against state denial of voting rights to Negroes. The District Court majority found as a fact on the evidence stipulated by the parties that neither the plaintiffs nor anyone else had been interfered with for simply picketing and demonstrating,[5] and also found that
"on the occasions in suit when some of the plaintiffs were arrested and charged with violating this Act. *745 that such persons deliberately and intentially [sic] blocked the sidewalk and one of the entrances to the county courthouse in Forest County, Mississippi, by walking so close together as to make use of such entrance and exit to and from said county courthouse by the officials and business visitors impossible."
The District Court held that no serious claim could be made that the statute was unconstitutionally vague or too broad on its face, and therefore refused to issue an injunction forbidding the prosecution of offenses under that law. And having found from the evidence that there had been no harassment of the plaintiffs, except as harassment could be said to exist in the ordinary enforcement of any valid law, the court refused to enjoin the state officials from enforcing the law against them and others, and dismissed the complaint.[6]
If, as I believe, the Mississippi statute is not unconstitutional on its face, then the District Court in dismissing the complaint and leaving the trials to the state courts acted in accordance with an unbroken line of this Court's cases going back to the early days of this country. See, e. g., Douglas v. City of Jeannette, 319 U. S. 157; Watson v. Buck, 313 U. S. 387; Beal v. Missouri Pac. R. Co., 312 U. S. 45; Spielman Motor Sales Co. v. Dodge, 295 U. S. 89; Fenner v. Boykin, 271 U. S. 240. It is true that Ex parte Young, 209 U. S. 123, held that state officials could be enjoined from harassing people by starting multitudinous criminal prosecutions against them where severe *746 cumulative punishments might accrue before the constitutionality of the state law involved could be tested. In the absence of some such extraordinary situation, however, this Court has uniformly held that federal courts should refrain from interfering with enforcement of state criminal laws. Thus in Douglas v. City of Jeannette, supra, this Court found no reason to permit a federal court to enjoin a state criminal proceeding even though the statute involved was the same day declared unconstitutional in a similar application. Murdock v. Pennsylvania, 319 U. S. 105.[7]
The Court in its cryptic per curiam order directs that "On remand, the District Court should first consider whether 28 U. S. C. § 2283 (1958 ed.) bars a federal injunction in this case . . . ." But the District Court has already considered § 2283[8] and at the very beginning of its opinion stated that § 2283
". . . is not jurisdictional, but expresses very clearly and definitely the policy and thinking of Congress. Such a statute has been on the books for many years and still stands in the above quoted form. Certainly *747 there are times and occasions which are exceptional, when it is proper for the Court to enjoin the prosecution of a criminal case, but the facts of this case and of this record do not approach such a situation." ___ F. Supp., at ___.
The appellants argue that 28 U. S. C. § 2283, which bars injunctions against actions already instituted in state courts, is not applicable here because the pending prosecutions were removed and the remand orders have been stayed, and because in this class action "The basic relief sought in the complaint is the enjoining of the prospective enforcement of the state statute . . . ." The question of applicability of § 2283 is here on appeal, and if the Court is uncertain about that statute's application here it has the duty to decide the question now and not remand to the lower court which has already decided it.
The Court's exceedingly brief order directs the District Court on remand, if § 2283 does not bar this action, to "determine whether relief is proper in light of the criteria set forth in Dombrowski" v. Pfister, 380 U. S. 479. Apparently the Court means to indicate that this recent decision created a new rule authorizing federal courts to enjoin state officers from enforcing state laws even though clearly and narrowly drawn to forbid picketers and demonstrators from obstructing street traffic and blocking the entrances of public buildings. The Court by citing Dombrowski seems to be indicating the existence of such a rule, since it would be a futile gesture to remand the case to the District Court merely to have it state formally what it said in dismissing under the Jeannette rule before: that "There is no basis of fact in this record or by a reasonable construction of the statute by which its constitutionality could be doubted." Since the District Court has expressed its view that the statute is constitutional on its face and has found in addition that there has been no unlawful harassing application of it, *748 there is no reason for us to remand the case to the District Court unless this Court wants either to upset the District Court's findings of fact or to order the District Court to hold, as this Court held about a subversive activities statute in Dombrowski, that the statute challenged is also unconstitutional on its face.
I did not participate in Dombrowski, but I do not think it is applicable here. Dombrowski did approve federal district court injunctions to prevent state officers from enforcing a state statute alleged and found to be void on its face as a violation of the First and Fourteenth Amendments on the ground that over breadth made it susceptible of sweeping and improper application abridging freedom of expression, where it was also alleged that the statute was part of a plan "to employ arrests, seizures, and threats of prosecution" under the statute in a way that would discourage the complainants and their supporters from asserting and attempting to vindicate their constitutional rights. This Court in Dombrowski held, as I read the opinion, that an injunction against any enforcement of any kind of the state statute (as distinguished from an order enjoining state officers from committing lawless acts) could issue there only because (1) there were threats of prosecutions purely to harass, with no hope of ultimate success, (2) the law was challenged as, and found to be on its face, an "overly broad and vague regulation of expression," and (3) "no readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single prosecution . . . ." Crucial to the holding in Dombrowski that any enforcement whatever of the statute should be enjoined was this Court's finding that the statute involved was unconstitutional on its face. This is clearly shown by the Court's statement that:
"[A]bstention serves no legitimate purpose where a statute regulating speech is properly attacked on its *749 face, and where, as here, the conduct charged in the indictments is not within the reach of an acceptable limiting construction readily to be anticipated as the result of a single criminal prosecution and is not the sort of `hard-core' conduct that would obviously be prohibited under any construction." 380 U. S., at 491-492. (Emphasis supplied.)
Dombrowski also indicate to me that there might be cases in which state or federal officers, acting under color of a law which is valid, could be enjoined from engaging in unlawful conduct which deprives persons of their federally guaranteed statutory or constitutional rights. Compare 17 Stat. 13, 42 U. S. C. § 1983 (1958 ed.). Stating these bases for permitting injunction against all enforcement in Dombrowski, most of which bases are not present here, is enough without more to show that Dombrowski cannot control the decision in this case. Here there is no allegation of improper conduct by law enforcement officers, and in fact, there is a specific finding to the contrary. And certainly the one unquestionably indispensable ingredient of Dombrowski required for a blanket injunction on enforcementa finding that the statute is unconstitutionally vague or broad on its faceis absent here unless the Court is convinced, without even hearing argument, that this Mississippi statute is unconstitutional on its face as an infringement on constitutionally protected expression.
I think that no such claim of unconstitutionality on its face can possibly be maintained. What the Mississippi statute forbids is so clear that any person of ordinary intelligence can or should understand it. I find it hard to take seriously a vagueness argument, since I doubt that there is a fourth grade schoolboy in this country who would not understand that the statute forbids him. either alone or with others, to block or obstruct ingress and egress to and from Mississippi public buildings (here *750 a courthouse) and to obstruct free use of the streets adjacent to those public properties. Nor is the statute overly broad in what it covers. It does not even undertake to forbid or regulate picketing or demonstrating on the streets (as I think it couldsee Cox v. Louisiana, 379 U. S. 559, 575 (concurring opinion); Labor Board v. Fruit & Vegetable Packers, 377 U. S. 58, 76 (concurring opinion)). It simply modestly provides that those who carry on such activities shall do so in a way that will not obstruct others who want to use the streets to travel or want to go in or out of a public building. The Mississippi statute is narrowly and precisely drawn, patently designed to accomplish this objective. Thus it fits this Court's often-repeated description of the kind of law which should be drawn in the State's exercise of its generally unquestioned constitutional power to regulate picketing and street activities. See, e. g., Cox v. Louisiana, 379 U. S. 536, 554-555; Thornhill v. Alabama, 310 U. S. 88, 105; Schneider v. State, 308 U. S. 147, 160-161. Far from questioning the power of States to regulate conduct on the streets and in public buildings, this Court said in Schneider v. State, supra, at 160:
"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic . . . ."
*751 It would seem inconsistent with our whole federal system to say that the Federal Constitution somehow takes away from States and their subdivisions the general power to control their streets and ingress and egress to and from their public buildings and other public properties. Such state control would have to be exercised consistently with special federal constitutional guarantees, such as the right not to be discriminated against on account of race, color or religion; but the statute here does not, on its face, draw any such invidious discriminations and the statute is attacked on its face. And of course Mississippi has no less power over its public buildings and streets than does any other State.
The Mississippi statute is in many respects like one that this Court sustained a few months ago against a challenge that it was void for vagueness on its face, and that it was an unjustified restriction upon the freedoms guaranteed by the First and Fourteenth Amendments. That statute, modeled after an Act of Congress passed in 1950, 64 Stat. 1018, 18 U. S. C. § 1507 (1958 ed.) made it an offense in Louisiana to picket or parade in or near a courthouse with an intent of interfering with or obstructing or impeding the administration of justice. The Court's opinion stated:
"The conduct which is the subject of this statute picketing and paradingis subject to regulation even though intertwined with expression and association." Cox v. Louisiana, 379 U. S. 559, 563.
And in a companion case, decided the same day, this Court stated: "Governmental authorities have the duty and responsibility to keep their streets open and available for movement." Cox v. Louisiana, 379 U. S. 536, 554-555. "A group of demonstrators," this Court said, "could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who *752 did not agree to listen to their exhortations." Id., at 555. The Court also emphasized in that same case that the "control of travel on the streets is a clear example of governmental responsibility to insure" "public order, without which liberty itself would be lost in the excesses of anarchy." Id., at 554. It is true that we have only recently held that Mississippi must not deny the constitutional right of Negroes to register and vote. United States v. Mississippi, 380 U. S. 128. But this, of course, does not mean that no good or valid law could come out of the State of Mississippi. We should without hesitation condemn as unconstitutional discriminatory voting laws of Mississippi or of any other State. We should with equal firmness, however, approve a law which on its face is designed merely to carry out the State's responsibility to protect people who want to get into and out of the State's public buildings and to move along its highways freely without obstruction.
I cannot believe for one moment that this Court in Dombrowski intended to authorize federal injunctions completely suspending all enforcement of a constitutionally valid state criminal law merely because state defendants allege that state officials are about to harass them by doing no more than enforcing that valid law against them in the state courts. If Dombrowski held any such thing, I think the quicker that case is reconsidered in order to give it a "limiting construction" the better it will be for the courts, the States, the United States and the people in this country who want to live in an atmosphere of peace and quiet. Creating new hurdles to the conviction of people who violate valid laws cannot be ranked as one of the most pressing and exigent needs of the times, to say the least. Perhaps at no time in the Nation's history has there been a greater need to make clear to all that the United States Constitution does not render States impotent to require people permitted to advocate views and *753 air grievances on the streets to do so without obstructing the use of those streets by those who want to use them to move from place to placethe primary use for which all the people pay taxes to build and maintain streets.
The record in this case tells us that there are probably hundreds of cases like these in one State alone. It is not difficult to foresee that reversal of the District Court's denial of injunction here will be a signal and invitation for many, many more efforts to tie the hands of state officials in many more States on charges that threatened prosecutions under valid laws are prompted by a desire to harass. Much has been said of late about the threat to prompt and efficient administration of justice from the increasing work load of our United States courts.[9] If that is a valid argument in deciding cases, it is not amiss to point out that the rule which the Court implicitly adopts here is bound to bring an ever-increasing number of cases into federal courts, where state prosecutions will be enjoined until a federal court can first weigh the motives of state officials in instituting prosecutions. This of course means more and more delays between the arrests of people accused of violating state laws and their trials. The law's delayswhich many believe are really a guilty man's most effective defenseare bound to be multiplied beyond measure. Moreover, it should not be forgotten that this is a big countrytoo big to expect the Federal Government to take over the creation and enforcement of local criminal laws throughout the country. The Nation was not formed with any such purpose in mind. It is wise and right and in conformity with the national governmental plan for federal courts to be vigilant and alert to protect federally guaranteed rights. But we put too much strain on the federal courts if we bodily transfer *754 from state- to federal-court jurisdiction what is, in effect, the initial step in the trial of persons charged with violating state or local criminal laws which are far from being unconstitutional on their face. The Federal Constitution certainly does not require us to do it and, in my judgment, forbids it. I would affirm the District Court's judgment.
MR. JUSTICE WHITE, dissenting.
I dissent from the per curiam remand of this case on the authority of Dombrowski v. Pfister, 380 U. S. 479, for while I joined the opinion of the Court in Dombrowski, I do not think it is applicable here.
The appellants in Dombrowski attacked numerous and sundry provisions of Louisiana's Subversive Activities and Communist Control Law and the Communist Propaganda Control Law on the ground that the statutes "violate the First and Fourteenth Amendment guarantees securing freedom of expression, because overbreadth makes them susceptible of sweeping and improper application abridging those rights." 380 U. S. 479, 482. There was also an allegation of threats to enforce these sweeping provisions as part of a "plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass" the appellants and to discourage their protected activities. The lower court denied relief on the ground that these allegations did not present a case of threatened irreparable injury to constitutional rights warranting the intervention of a federal court. We reversed. The Court, at the outset, fully and explicitly accepted the teaching of the cases "that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework" and that "the mere possibility of erroneous initial application of constitutional standards will *755 usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." 380 U. S., at 484-485. Without questioning the rule that the possible invalidity of a state statute is not itself ground for equitable relief, Terrace v. Thompson, 263 U. S. 197, 214, or the imminence of prosecution under such a statute, since no person is immune from prosecution in good faith for alleged criminal acts, Douglas v. City of Jeannette, 319 U. S. 157, 163-164, we held that there was a sufficient showing of threatened irreparable injury to federal rights, which could not be dissipated by a particular prosecution, to warrant equitable intervention by a federal court. What was controlling on both the exercise of equitable power and the abstention issue was the depiction of a "situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights." 380 U. S., at 485. The situation depicted here does not contain the elements which were operative in Dombrowski
Dombrowski did not hold that the traditional equitable limitations on a federal court's power to enjoin imminent or pending criminal proceedings are relaxed whenever a statute is attacked as void on its face or as applied in violation of the First and Fourteenth Amendments. Rather that case makes clear that two particular kinds of challenges to state criminal statutes warrant extraordinary intervention in a State's criminal processes. They are planned prosecutorial misuse of a statute regulating freedom of expression and a vagueness attack on such a statute. Where threats of enforcement are without any expectation of conviction and are "part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass," it is obvious that defense in a state criminal prosecution will not suffice to avoid irreparable injury. The very prosecution is said to be a part of the unconstitutional scheme and the *756 scheme, including future use of the statutes, is quite irrelevant to the prosecution in the state courts. Similarly where a plethora of statutory provisions are assailed as invalidly vague, uncertain or overbroad, with a consequent reach into areas of expression protected by the First Amendment, and such provisions are not susceptible of clarifying construction under the impact of one case, defense in the state prosecution cannot remove the unconstitutional vice of vagueness. For "those affected by a statute are entitled to be free of the burdens of defending prosecutions, however expeditious, aimed at hammering out the structure of the statute piecemeal, with no likelihood of obviating similar uncertainty for others." Dombrowski v. Pfister, 380 U. S., at 491. To relegate the party to defense in a state proceeding would be likely to leave standing a statute susceptible of having a severe in terrorem effect on expression, even if one prosecuted under such a statute is not convicted. It is this reasoning that accounts for relaxation of the abstention doctrine where sweeping and unclear statutes are attacked on their face, as in Baggett v. Bullitt, 377 U. S. 360, a case quite pertinent to the rationale of Dombrowski.
Here there is no more harassment alleged than that ordinarily and necessarily entailed by a criminal prosecution based on a good faith belief that the defendants have violated a statute. Although it is said that the statute is aimed at demonstrations, and that the prosecutions interfere with them, these allegations do not charge a misuse of the statute. Indeed, the petitioners allege that the picketing said to be unlawful under it was peaceful and nonobstructive, and the State claims quite the contrary. This issue is at the core of the criminal trial and to decide it in a federal court represents a wholly duplicative adjudication of an ordinary factual matter in dispute in a state criminal trial.
*757 Nor do I think that any substantial claim of vagueness or overbroadness can be made about the statute here at issue.[1] Its provisions are these:
"It shall be unlawful for any person, singly or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or interfere with free ingress or egress to and from any public premises, State property, county or municipal courthouses, city halls, office buildings, jails, or other public buildings or property owned by the State of Mississippi or any county or municipal government located therein or with the transaction of public business or administration of justice therein or thereon conducted or so as to obstruct or interfere with free use of public streets, sidewalks or other public ways adjacent or contiguous thereto."
To me the terms "obstruct" and "interfere" raise no issues of vagueness or overbreadth such as were considered to be present in Baggett v. Bullitt, 377 U. S. 360, and Dombrowski, 380 U. S. 479, for the terms are neither unclear nor open-ended. The statute does not deal with belief or expression as suchit does not ban all forms of picketing, Thornhill v. Alabama, 310 U. S. 88; Cox v. Louisiana, 379 U. S. 559but rather with obstructions to and interferences with ingress or egress to and from public buildings and the sidewalks and streets contiguous thereto, assuredly permissible subjects of state regulation. Cox v. Louisiana, 379 U. S. 536, 554. The statute does "aim specifically at evils within the allowable area of state control," Thornhill v. Alabama, 310 U. S. 88, 97, and does not leave one to guess at where fanciful possibility ends and intended coverage begins. Cf. Baggett v. Bullitt, 377 U. S. 360, 373-375.
*758 The constitutional challenge to this statute which thus emerges is, in my view, an assertion that the type of conduct covered by the clear terms of the statute, obstructive picketing at public buildings, for example, cannot constitutionally be proscribed. Whether the attack is made on the face of the statute or as applied is beside the point, for in neither case would there be those special circumstances which Dombrowski requires to sanction federal intervention into a State's criminal processes. Whatever "criteria" Dombrowski contains, they do not indicate that in this situation the ordinary rule barring injunctive relief against state criminal prosecutions should be waived.
"[T]he mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings," and what is required for extraordinary intervention is a "situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights." Dombrowski v. Pfister, 380 U. S. 479, 484-485. In Douglas v. City of Jeannette, 319 U. S. 157, the Court denied injunctive relief against threatened application of a city ordinance to constitutionally protected religious solicitation, "since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction." 319 U. S., at 163. The constitutional challenge to this Mississippi statute, unlike the attack on the statutes in Dombrowski v. Pfister and Baggett v. Bullitt, but indistinguishable from that in Douglas v. City of Jeannette, does not entail "extensive adjudications, under the impact of a variety of factual situations." Baggett v. Bullitt, 377 U. S. 360, 378, to bring it within constitutional bounds. This is not a case where "no readily apparent construction suggests itself as a vehicle *759 for rehabilitating the statutes in a single prosecution." Dombrowski v. Pfister, 380 U. S., at 491.
In these circumstances it is difficult to see what hazards to federal rights are posed by requiring one to follow orderly proceedings in the state courts. Numerous cases establish that the possible invalidity of a statute, or the imminence of a prosecution under it, itself will not suffice to warrant intervention. Terrace v. Thompson, 263 U. S. 197, 214; Fenner v. Boykin, 271 U. S. 240; Spielman Motor Sales Co. v. Dodge, 295 U. S. 89; Beal v. Missouri Pac. R. Co., 312 U. S. 45; Douglas v. City of Jeannette, 319 U. S. 157. Dombrowski v. Pfister is not to the contrary.
It is obvious, however, that several of my Brethren find more guidance in Dombrowski than I do and more than I think a district judge can find in either that case or this unrevealing per curiam remand, which ignores the differences between this case and Dombrowski. The issues are important and of immediate concern and I would note probable jurisdiction and set this case down for argument.[2]
NOTES
[*] House Bill No. 546, Gen. Laws of Miss. 1964, c. 343.
[1] See Bell v. Maryland, 378 U. S. 226, 242 (opinion of DOUGLAS, J.); id., at 318 (BLACK, J., dissenting); Hamm v. City of Rock Hill, 379 U. S. 306, 318 (BLACK, J., dissenting).
[2] We are informed that after the decision of the District Court in the present case, 170 of the state-court defendants removed their prosecutions to a federal district court, purportedly under authority of 28 U. S. C. § 1443 (1958 ed.). The Federal District Court ordered the cases remanded to the state courts. The Court of Appeals stayed the remand orders, and an appeal from those orders is now pending before the Fifth Circuit. Hartfield v. Mississippi, No. 21811; Anderson v. Mississippi, No. 21813; Carmichael v. City of Greenwood, No. 22289. It can be assumed that if appellants are unsuccessful in the Fifth Circuit they will seek review in this Court, which will take at least another year. Today's decision appears to add more devices to the collection of delaying tactics by which state criminal defendants may use collateral litigation in the federal courts to prevent their prosecutions in state courts from coming to trial for many years, if ever.
[3] House Bill No. 546, Gen. Laws of Miss. 1964, c. 343.
[4] The complaint alleged that the statute violated the First, Fifth, Thirteenth, Fourteenth and Fifteenth Amendments.
[5] "The Court, therefore, further finds as a fact that the State of Mississippi is prosecuting the plaintiffs in the state court under said picketing statute in good faith, and is fully entitled under the law to do so to conclusion of such prosecution . . . ." ___ F. Supp., at ___.
[6] We understand from the District Court's opinion and conclusions of law that it did not dismiss the complaint on the ground that it thought it necessary to have the state courts construe the statute, but rather on the ground that having found the statute constitutional it dismissed in order for the criminal cases to be tried in the state courts. Moreover, whatever the reasons assigned for dismissal by the District Court, it is well established that an appellee in whose favor a judgment has been rendered is entitled to an affirmance on any proper ground.
[7] In an opinion joined by MR. JUSTICE CLARK denying a petition for habeas corpus in similar circumstances, I stated:

"This petition for habeas corpus is denied because the factual allegations fall far short of showing that there are not Mississippi state processes available by appeal or otherwise for Petitioner to challenge her state conviction, which processes would effectively protect her constitutional rights, particularly since any denial of such rights by the highest court of a State can be remedied by appropriate appellate proceedings in the Supreme Court of the United States. See 28 U. S. Code, Sections 2241, 2254 and 1257." Application of Wyckoff, 6 Race Rel. L. Rep. 786, 794, discussed in Brown v. Rayfield, 320 F. 2d 96, 98-99 (C. A. 5th Cir.)
[8] "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U. S. C. § 2283 (1958 ed.).
[9] See Case v. Nebraska, ante, pp. 337, 340 (concurring opinions); Linkletter v. Walker, ante, p. 618.
[1] House Bill No. 546, Gen. Laws of Miss. 1964, c. 343.
[2] As the Court recognizes, the question whether § 2283 bars an injunction in suits brought under 42 U. S. C. § 1983 (1958 ed.) is an open one: I think that the presence of that issue is a further reason why a per curiam remand is inappropriate.