**UNITED STATES of America,
Plaintiff,**

**v.**

**STATE OF MISSISSIPPI et al.,
Defendants.**

**Civ. A. No. 3312.**

United States District Court
S. D. Mississippi,
Jackson Division.

May 21, 1966.

Nicholas deB. Katzenbach, Atty. Gen. of United States, Robert Owen, Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for the United States.

Joe T. Patterson, Atty. Gen. of Mississippi, Charles Clark, Jackson, Miss., Hardy Lott, Greenwood, Miss., Joseph Dale, Donald G. Kruger, Prentiss, Miss., Cleveland Davis, Itta Bena, Miss., G. B. Herring, Joe R. Fancher, Jr., Canton, Miss., B. D. Statham, Magnolia, Miss., Aubrey Bell, Greenwood, Miss., W. M. Deavours, M. B. Weems, Laurel, Miss., Robert L. Goza, Jr., Canton, Miss., for State of Mississippi.

Before BROWN, Circuit Judge, and COX and CLAYTON, District Judges.

PER CURIAM:

Subsequent to the remand in this case, United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717, two significant things have occurred which have precipitated the filing of an amended complaint by the United States. There was first the enactment of the Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C.A. § 1973 et seq. and, second, the amendments to the Mississippi Constitution and its statutory structure as to voter registration and qualification.[1] The principal effect of the changes in the Mississippi structure is to eliminate the interpretation and understanding test and to confine these to a literacy test as to the ability to read and write.

The amended complaint is addressed primarily to action of state election officials which, the Government contends,

1. In June 1965, the legislature, in extraordinary session, repealed statutory provisions and initiated the repeal of constitutional provisions requiring, among other things, a constitutional interpretation test, a complex application form (which some Registrars insisted be executed perfectly), the good moral character test, and the publication of the names of applicants in the newspaper. See 1965 Amendments to Mississippi Constitution. § 244, § 241–A and revisions of Mississippi Code § 3209.6 et seq. The legislature substituted therefor the requirement that applicants for registration be able to read and write, § 3209.7, and that they complete a six-question application and take a prescribed statutory oath. The legislature further required that all voters be able to read and write, (§ 3235) and repealed a statute providing for assistance at the polls to illiterate voters, § 3212.7. The voters of Mississippi ratified the necessary constitutional changes on August 17, 1965. As a matter of fact even prior to this ratification by the voters, the Attorney General of Mississippi, on July 7, 1965, advised the registrars of the respective Mississippi counties that in his opinion the new form prescribed by the legislature was in effect and could be used immediately. By August 1, 1965, the majority of registrars had begun to do so.

These changes are made in SB 1501 to 1510, amending sections

3209.6
3209.7
3210
3212
3212.5
3235;

and repealing sections

3213
3212.7
3217–01 to 3217–15
3273;

Laws of Mississippi; Extraordinary Session, 1965.

frustrates the effective use of voter eligibility lists and Certificates of Eligibility to vote issued by Federal Examiners in several counties of the State. This includes an attack on four state Chancery Court injunctions against county and municipal Registrars obtained by the Attorney General of Mississippi enjoining them from filing or giving recognition to any such voter list or Certificate of Eligibility.

The case has been submitted on a stipulated record. The stipulated facts show that through March 19, 1966, 31,906 persons have been listed in some eighteen counties by Federal Examiners under the 1965 Act.[2] The issue is now of critical importance in view of the primaries to be held June 7, 1966.

The State election officials contend that the relief sought should not be granted and that all or part of the voter lists and individual Certificates of Eligibility should be held ineffective. These objections, in various ways, are primarily an attack on the regulations (and manual) issued by the Civil Service Commission pursuant to § 9(b) of the Act, and the application forms promulgated thereunder. Before considering these, it is appropriate to state that all recognize that much has now been settled by State of South Carolina v. Katzenbach, 1966, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769.

 The major attack is that the oath required on the Federal application form is markedly different from that prescribed in the Mississippi law[3] and the Mississippi oath not being unconstitutional could not be ignored since the Act

takes into account valid provisions of State law.[4] Except for moving the factual statements from the body of the state oath to the specific items in the Federal Questionnaire Form, which we regard as immaterial, the significant difference is that in the Federal oath the subscriber states it to be "true and correct to the best of my knowledge, information and belief" and not, as in the Mississippi oath, an unqualified absolute statement. We think the Federal oath meets the requirements of the Act. Realistically, the sanction of perjury for "knowingly and willfully" giving false information, § 11(c), or making a false statement, § 11(d), takes into account whether the person in good faith believed it to be true.[5] Moreover, the whole scheme envisioned by Congress was a complete Federal system for voter listing by Examiners having power to administer oaths, § 6, on Federally prescribed forms, § 9, covering the substance of valid State requirements but carrying Federal sanctions, § 11.

 Next, they contend that although the Act outlaws tests to determine ability to read and write, § 4(a) and (c), the application form does not even inquire as to the applicant's ability to read and write and in any event Mississippi may constitutionally require literacy although it may not test therefor. In rejecting this, it is sufficient to say we agree with the several opinions and the decision in Dent v. Duncan, 5 Cir., 1966, 360 F.2d 333.

 Another asserted deficiency is the absence of any inquiry in the form as to the disqualification for voting in mu-

---

2. Of these, 4,025 have an "X" on their application in lieu of a signature.

3. In its present form it is found in SB 1501, § 3209.6, see note 1, supra.

4. See § 7(b) authorizing the Examiner to list any person found "to have the qualifications prescribed by State law not inconsistent with the Constitution and laws of the United States * * *."

 Under § 9(b), the Civil Service Commission in consultation with the Attorney General is to promulgate regulations

instructing "examiners concerning applicable State law not inconsistent with the Constitution and laws of the United States with respect to (1) the qualifications required for listing, and (2) loss of eligibility to vote."

5. Compare the Mississippi Code as to perjury.
 "Every person who shall wilfully and corruptly swear * * * to any material matter * * * shall be guilty of perjury." § 2315.
 See Cothran v. State, 1860, 39 Miss. 541.

nicipal elections because of conviction within two years of such election of the violation of certain liquor laws and the nonpayment of certain municipal taxes for two years, § 3374-60. This goes to *voting* qualifications at the time of the elections as the regulations recognize.[6] There are ample facilities to assure that any such persons will be de-listed from the Federal lists [7] prior to the municipal elections which, except for special elections, will next be held in 1969. §§ 3374-62, 3374-63.

There perhaps may be a deficiency in the regulations as to mental incompetency. In effect, these restrict disqualification to those who have "been declared legally insane by a court * *."[8] The Mississippi statute, however, disqualifies "idiots, insane persons * *." § 3235. This possible deficiency does not invalidate the prior lists or Certificates of Eligibility but the Commission should carefully reconsider this to determine whether appropriate changes should, or may, Cf: § 4(c) (1) (2), be made.

We find nothing to support the contention that the law would require that after the issuance of the Certificate of Eligibility to vote, the holder must then go to the Registrar's office and sign the oath in the registration book. § 3212; SB 1504, See Note 1, supra. Eligibility to vote is determined as of the time of application and the Act is self-executing once the applicant is listed and the certificate issued to him. § 7(b), (c). Filing of the certified list with the Registrar by the Examiner is enough as the Act directs that such "election official shall place such names on the official voting list." § 7(b). See § 11(a).

With these objections overruled it follows, of course, that the State Chancery Court injunctions are utterly without any force or effect. The command of the Federal Act is precise, § 7(b), (c), § 11(a), and controls under the Supremacy Clause, Art. VI of the Constitution and relief is open to the Attorney General. § 12(d).

This leaves only the Government's counter suggestion that in view of the 1965 repeal of § 3273, there is presently no provision for assistance to illiterate voters at the time of voting. We agree that the obvious sense of Congress is to assure not just registration but the full exercise of the right to vote itself. Indeed, the Act defines "vote" or "voting" in terms of any and "all action necessary to make a vote effective in any * * * election * * * [including] * * * casting a ballot * * *." § 14(c). We think some suitable arrangements must be made to afford this assistance;[9] and there are ample resources under the Act to effectuate it. Cf: § 5; § 12(d).

Finally, although this opinion and the order to be entered under it accords the relief to the Government substantially as sought and rejects the attacks made by the State officials, we are in agreement with the Defendants that at this time it is not necessary, and hence it would be inappropriate, to cast the relief in the form of an injunctive order. At the bar there were positive assurances by the State's highest law officer in person that the declarations of this Court would be followed and applied.[10] We, therefore, think that it is quite sufficient, as well as appropriate under the

---

6. See Title 45, Part 801, Fed.Reg. Aug. 10, 1965, p. 9915; F.R.Doc. 65-8498.

7. §§ 7(d) (2); 9(b) (2) and F.R.Doc. 65-8498; Note 6, supra, pp. 9916-9923.

8. The Regulations state it in terms of qualification:
 "6. He has not been declared legally insane by a court or if so declared, he has been subsequently declared legally sane or competent by a court."
 F.R.Doc. 65-8498, p. 9915.

9. On argument, the Court was informed that the Mississippi Senate in the current regular session has passed a bill, the effect of which would be to require such assistance by a "voter assistance manager." SB 2224 Regular Session 1966 amending §§ 3243, 3245.

10. Of course, the parties have a perfect right to seek review, reversal or modification of our order.

Act, § 12(d), that the duties and responsibilities with respect to the Act and the outstanding State Court injunctions be cast in the form of declaratory relief.[11]

Decree in accordance with opinion.

### DECLARATORY JUDGMENT

The Court having considered this case on the amended complaint filed by the United States and the stipulated record herein and having heard the arguments of counsel hereby enters its Declaratory Judgment to DECLARE, ADJUDGE AND DECREE as follows:

I. All provisions of Mississippi law which condition the right to vote in Mississippi or to register to vote on the ability to read and write, including Section 244 of the Mississippi Constitution and Sections 3130, 3209.6, 3209.7 and 3235 of the Mississippi Code, contain a "test or device" as defined in Section 4(c) of the Voting Rights Act of 1965, have no force or effect during the period of suspension prescribed in said Act.

II. The several writs of injunction or other decrees heretofore issued by the Chancery Court of Jefferson Davis County on or about September 9, 1965, in the case of State of Mississippi v. Daniel, et al., No. 4836; by the Chancery Court of Jones County on or about September 10, 1965 in the case of State of Mississippi v. Caves, et al., No. 20856; by the Chancery Court of Leflore County on or about September 8, 1965 in the case of State of Mississippi v. Lamb, et al., No. 14735; and by a Justice of the Supreme Court of Mississippi on or about September 24, 1965 in the case of State of Mississippi v. Campbell, et al., No. 18–794, are in contravention of Sections 7(b) and 14(b) of the Voting Rights Act of 1965 and therefore null, void, and without force or effect;

III. It is the duty of the defendant State of Mississippi and its employees and agents, including all county and municipal registrars and all local election officials, and all other defendants, their employees, agents, successors and all persons in active concert or participation with them or with any of them to place upon the registration and poll books of the respective counties and municipalities, in time to facilitate their voting in any election for which they are eligible to vote, the names of all persons heretofore or hereafter certified by federal voting examiners as the names of persons eligible to vote; the names of all persons so certified and placed in the mail or otherwise transmitted to local officials on or before April 23, 1966 to be placed on said rolls in time to make such placement effective for the primary election of June 7, 1966.

IV. It is the duty and responsibility of the precinct officials at each election to provide to each illiterate voter who may request it such reasonable assistance as may be necessary to permit such voter to cast his ballot in accordance with the voter's own decision.

V. It is the duty of the United States and its respective agencies having responsibility therefor to make available to the Registrar with whom the certified list of eligible voters is filed as well as the Attorney General of Mississippi (or their duly designated representatives) the voter applications of each of the persons named on such certified list of eligible voters for inspection, consideration and copying if desired; these should be made available concurrently with the filing of each list. This requirement may be satisfied by the Government voluntarily supplying copies of the application concurrently with the filing of the lists.

VI. This Court retains jurisdiction of this cause for the purpose of issuing any

---

11. The argument brought to light an apparent administrative practice which the Court regards to be unsupported. Consequently, the decree imposes on the Government the obligation of concurrently making available for inspection, copying, etc., the applications of those listed on a voter list to enable the election authorities intelligently to exercise a considered judgment on whether the listing should be challenged. See § 9(a) and Regulation Title 45, Part 801, Subpart C, §§ 801.301–317.

and all additional orders which may become necessary and appropriate.

VII. The Court at this time makes no adjudication as to the costs and disbursements of this action subsequent to the filing of the amended complaint.

Ordered, declared, adjudged and decreed this 21st day of May, 1966.