John **MORRIS**, Florence **Robin**, Laura Seabron, Mary Patrick, Dorothy Clark, and Eva Nash, for themselves, jointly and severally, and for all others similarly situated, Plaintiffs,

v.

Ben W. **FORTSON**, as Secretary of State of the State of Georgia, and as a member of the State Election Board of the State of Georgia, Mrs. Harry B. (Melba) Williams and Mr. H. H. (Holcomb) Perry, Jr., as members of the State Election Board of the State of Georgia, Eugene Gunby, as Ordinary of Fulton County, Georgia, and all other Ordinaries of Georgia, jointly and severally, who are similarly situated, Defendants.

Civ. A. No. 10483.

United States District Court
N. D. Georgia,
Atlanta Division.
Oct. 28, 1966.

Morris Brown, Charles Morgan, Jr., Maughlin McDonald, Atlanta, Ga., for plaintiffs.

Harold Sheats, County Atty., John Tye Ferguson, Asst. County Atty., Atlanta, Ga., for Eugene Gunby.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., Asst. Atty. Gen., Alexander Cocalis, Atty., Gerald H. Cohen, Deputy Asst. Atty. Gen., Atlanta, Ga., for defendants Fortson, Williams & Perry.

Before BELL, Circuit Judge, and MORGAN and SMITH, District Judges.

PER CURIAM.

Plaintiffs, claiming to represent the class of voters in Georgia who wish to cast write-in ballots in the General Election to be held on November 8, 1966, contend that the Election Code of Georgia is unconstitutional in several respects. They are particularly interested in the race for governor. Their contention rests on the assertion that several sections of the code,[1] taken together, unduly diminish their rights as electors under the federal Constitution and the Voting Rights Act of 1965. 42 U.S.C. § 1973. This view stems from the overall conclusion that the Code, which prohibits the use of stickers or stamps, renders it difficult, if not impossible, for certain members of their class to cast a write-in ballot for Governor.

Their class breaks down generally into three groups: First, those who are literate; second, those who are semi-literate, in that they do not spell well and would not know how to spell their candidate's name; and third, those who are complete illiterates to the extent that they cannot read or write.[1a]

With respect to the first group, those who are literate and who complain that their right to a secret ballot would be impaired by having to request a write-in ballot in those counties in Georgia using votomatic procedures, it was stipulated that each voter would be given a write-in ballot at the 1966 general elections along with the votomatic ballot. It was agreed, upon this stipulation, that count two of the complaint, which goes to the denial of secret ballot questions, became moot,

---

1. The specific sections of the Code are: Sections 34–1103(b) (c), 34–1206(a) (c) (d) (g) (i), 34–1214, 34–1220(a) (c) (d) (f), 34–1224, 34–1228, 34–1309(b) (vi), 34–1310(b), 34–1315(d), 34–1316(b) (c), 34–1317, 34–1319(a), 34–1321(c), 34–1322, 34–1326(a) (c) (d), 34–1328(c) (e) (f), 34–1329, 34–1505, 34–1925(d), 34–1926(a) (d) (e), 34–1927 and 34–1928.

1a. The class is not composed of members of a single race. This Opinion and the Judgment to be rendered herein are in no way based upon considerations of race or color.

and thus the first group of the class now assert no further claims for this particular election.[2]

■ As concerns the second group, those who are semi-literate in that they do not spell well, plaintiffs rest their case on Georgia Code 34–1505, which requires a tabulation of write-in ballots exactly as written. They contend that this provision means that the particular candidate for whom plaintiffs wish to cast a write-in ballot may not receive credit for those ballots on which his name is misspelled. This is a question which may more properly be considered in the event the problem arises after the election. It is sufficient to say at this time that those persons who do not spell well may take a paper with them into the voting booth which contains the correct spelling of their candidate's name and from which they may copy that name, and thereby avoid any problem of spelling. There is no Georgia law which prohibits such procedure.

This leaves for consideration the case of the illiterates, those persons in the class who cannot read or write. Georgia Code 34–1317 provides for assistance to those electors in this category. It expressly covers those persons who cannot read, but we construe this language to mean persons in the illiterate class who can neither read nor write. This assistance section would include and benefit the vast majority of those illiterates here asserting claims, for most would desire to vote in each race in the General Election. A sticker or stamp would help them in only one race. Nevertheless, they assert the right to cast a write-in ballot by a sticker, stamp or similar prearranged method in the Governor's race only. Georgia Code §§ 34–1103(b) and 34–1315(d) prohibit the use of any such method. Plaintiffs assert that these sections are unconstitutional in the face of the Federal Constitution as supplemented by the Voting Rights Act of 1965, supra, in that it interferes with the right of an illiterate to cast an effective ballot. Simply stated, their position is that these statutes amount to a federally proscribed literacy test.

Our conclusion is upon these facts, that few if any of the illiterate class represented in this suit would wish to take advantage of the sticker or stamp method alone since they would not thus be enabled to vote in the other races. Therefore, in most cases, they would seek assistance due them as illiterates under Georgia Code § 34–1317. It follows that the sticker or stamp question is one of slight importance in the overall voting picture. What the illiterate needs is somone to assist him inside the voting booth in casting his ballot in all of the races.

■ We hold that these Code Sections prohibiting the use of stamps or stickers are not unconstitutional or proscribed by the Voting Act of 1965 on their face. We also hold that they are not unconstitutional in application in view of what is hereafter said concerning assistance available to the illiterate voter under the Georgia law.

■ It is settled that illiterate voters may be rendered assistance. Katzenbach v. Morgan, 1966, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828. Indeed, illiterate voters *must* be rendered assistance in order to effectuate their constitutional right to vote. United States v. State of Mississippi, 256 F.Supp. 344 (S.D.Miss., 1966); United States v. Louisiana et al., (E.D.La., 1966). This brings us to the question of whether the assistance permitted under the Georgia Election Code is adequate.

■ Under § 34–1317 of that Code, any voter able to receive assistance, and

---

2. This stipulation and ruling go only to the General Election of 1966. Defendants wish to preserve the question of being required to furnish a write-in ballot to every voter for future litigation. They complain of the expense in the event such procedure is not a valid requirement. Ordinarily, absent an organized write-in campaign, it might be argued that the secret ballot right is not impaired simply by asking for a write-in ballot in view of the large number of persons whose names might be written in.

this would include the illiterates in the class here represented, might be assisted by any elector residing in the election district or any member of the voter's family. However, no such person doing the assisting, which includes going inside the voting booth to ⌐ffectuate the franchise, might assist ₁ore than ten persons. This appearec to have been a reasonable requiremen't. However, in 1966 the General Assembly of Georgia amended this statute to provide that no person might assist more than one such voter. This amendment did not apply to the physically infirmed, such as a blind person, but its effect is limited to illiterates, the group whose rights are here in question.

■ The facts are sufficient to make it certain that this limitation is unconstitutional in application. For example, where two members of the same family are illiterate, it would be necessary to find two persons to accompany them to the polls so as to assist them. Where a large number of illiterates vote at the same voting place, many additional persons would be required for assistance purposes, thus adding to the burden of conducting an orderly election. In many cases, it would be difficult for a person in need of assistance to find a voter or a family member qualified to assist. The other side of the coin is that the state policy apparently is to prevent the will of an illiterate voter from being over-come by an organized or partisan approach. We think the former statute permitting a person to assist as many as ten illiterates was reasonable under the circumstances and would serve to keep down partisanism. At the same time, it would make the franchise effective to the illiterate. The new statute, in our view, goes too far. It is unduly restrictive. We hold that it is unconstitutional in that it conflicts with the Fourteenth Amendment to the Federal Constitution, implemented by the Voting Rights Act of 1965 which extends the franchise to illiterates.[3]

The complaint is denied in all respects save as to that portion of the assistance statute which provides that no person may assist more than one voter. The Court retains jurisdiction for such other and further proceedings as may be deemed appropriate in connection with any post-election arising under Code § 34–1505 having to do with the tabulation of such write-in ballots as are cast.

The parties have agreed that the Court may render final judgment at this time. Accordingly, plaintiffs are directed to prepare and present a judgment consistent with the foregoing after service upon defendants. The judgment shall include injunctive relief providing that a person otherwise qualified to render assistance under Code Section 34–1317 may render such assistance to as many as ten voters during the 1966 General Election.[4]

---

3. At trial, the defendants raised the contention that the plaintiffs have no standing to attack the provisions of the Georgia Election Code, as amended, under the Voting Rights Act of 1965, as the same have been approved by the Attorney General under the certification provisions of that Act. With this conclusion we cannot agree. The provisions of the Voting Rights Act itself provide that the district courts have jurisdiction of proceedings instituted thereunder "without regard to whether a person asserting rights under the provisions of this subchapter shall have exhausted any administrative or other remedies that may be provided by law". Sec. 1973j(f). Further, Sec. 1973a(c) and Sec. 1973c expressly state that such an approved amendment may be enforced "except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualifications, prerequisite, standard, practice, or procedure". The plain effect of such language is to permit actions by those individuals under the protection of the statute, without regard to the administrative approval of the Attorney General.

4. The Court would prefer that such action be taken by the Election Board itself, which is before the Court as a body. See Georgia Code § 34–203(a). However, the state law limits the effective date of any such rule or regulation "until 60 days after the same shall have been adopted and promulgated". Georgia Code § 34–202(b). Such date would, of course, come too late for the problem presented here.