Decided November 2, 1987

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | | |
|---|---|---|
| PEDRO P. TENORIO, | ) | CIVIL ACTION NO. 85-488 |
| Plaintiff, | ) | |
| vs. | ) | |
| CARLOS S. CAMACHO, BANK OF SAIPAN, and SID BLAIR, | ) | |
| Defendants. | ) | |
| BANK OF SAIPAN and SID BLAIR, | ) | |
| Cross-Claimants and Third-Party Plaintiffs, | ) | |
| vs. | ) | |
| CARLOS S. CAMACHO, TOKAI BANK OF CALIFORNIA, WAYNE WRIGHT, and PEDRO P. TENORIO, | ) | |
| Cross-Defendants, Third-Party Defendants, and Counterdefendants. | ) | |
| FRANK S. SANTOS, | ) | CIVIL ACTION NO. 85-507 |
| Plaintiff, | ) | |
| vs. | ) | |
| CARLOS S. CAMACHO, BANK OF SAIPAN, and SID BLAIR, | ) | |
| Defendants. | ) | |

**197**

```
                          )
BANK OF SAIPAN and SID BLAIR,)
                          )
      Cross-Claimants and )
   Third-Party Plaintiffs, )
                          )
      vs.                 )                    ORDER
                          )
CARLOS S. CAMACHO, TOKAI BANK)
OF CALIFORNIA, WAYNE WRIGHT, )
and PEDRO P. TENORIO,     )
                          )
      Cross-Defendants,   )
   Third-Party Defendants, )
   and Counterdefendants.  )
```

This matter comes on before the court on the motion of Tokai Bank of California (Tokai Bank) to dismiss the Third-Party Complaint filed against Tokai Bank by defendants Bank of Saipan and Sid Blair. The motion is based on Com.R.Civ.Pro. 12(b) and on the grounds that this court lacks personal jurisdiction over Tokai Bank. In order to place the motion in the proper prospective, a certain amount of history is required to be set forth.

## BACKGROUND

During the 1985 gubernatorial campaign in the Commonwealth, a public debate between Governor Pedro P. Tenorio and his opponent Carlos S. Camacho was held. During the debate Camacho stated that Tenorio had a bank account at the Bank of America, Loma Linda, California branch and that $4,000 per month was deposited to the account by an employee of an oil company that sells inferior oil to the Commonwealth.[1]

Shortly after the debate, Tenorio filed Civil Action

---

[1] The essence of Camacho's statements are taken from the allegations in the Amended Complaint filed by Tenorio against Camacho for defamation.

**198**

No. 85-488 against Camacho for defamation and damages resulting therefrom. The gist of the suit, as alleged in paragraphs 8, 9 and 10 of the Amended Complaint, is that the statements made by Camacho were meant and were understood to mean that Tenorio, as a public official, had unlawfully committed the crime of bribery or extortion.

Following on the heels of Civil Action No. 85-488 was another lawsuit, Civil Action No. 85-507, brought by Frank S. Santos who identified himself in his Amended Complaint as the employee of the oil company who Camacho says made the illegal payments. Thus, it is alleged, Camacho defamed Santos by accusing him of bribery.

The amended complaints in Civil Actions 85-488 and 85-507 include as co-defendants, the Bank of Saipan and Blair. They are charged with negligence in supplying Camacho with erroneous information regarding the Loma Linda bank account which Camacho used for the debate. There are also other counts as to the impropriety of the Bank of Saipan and Blair releasing private banking information to Camacho about the bank account of Santos which was also used as a basis for the statements made by the former at the debate.[2]

Subsequent to the filing of the amended complaints the Bank of Saipan and Blair filed Third-Party Complaints in both Civil Actions 85-488 and 85-507 against Tokai Bank and an employee of

---

[2]
These other counts in the Amended Complaint are not pertinent to the motion before the court.

the Bank, Wayne Wright. In essence, the pleadings allege[3] that Tokai Bank is a California corporation with a branch in Alhambra, California. Wright was alleged to be a Vice-President of the Bank in September of 1985. At that time, Camacho's agent, a Mr. Robert M. Goldsmith, contacted Wright to gain information about a bank account at the Bank of America, Loma Linda Branch in the name of Tenorio. Goldsmith told Wright that the information was to be used in the gubernatorial campaign in the Commonwealth between Tenorio and Camacho. Wright contacted the Bank of America and then passed on information to Goldsmith that Tenorio had an account at the Loma Linda Branch of the Bank of America with the balance being in the mid-three figures. The information was erroneous but was conveyed to Camacho with the knowledge that Camacho would use it in the gubernatorial campaign.

The Bank of Saipan and Blair seek indemnity against Tokai Bank and Wright for any and all damages which may result from the actions brought against them by Tenorio and Santos.

Upon being served with the Complaint and Summons in California, Tokai Bank filed this motion to dismiss for lack of

---

3/
For the purposes of a 12(b) motion, the well pleaded allegations in the complaint are construed to be true.

U. S. v. Mississipi, (1965) 380 U.S. 128, 13 L.Ed.2d 717, 85 S.Ct. 808, on remand (SD Miss.) 256 F.Supp. 344; Kugler v. Helfant, (1975) 421 U.S. 117, 44 L.Ed.2d 15, 95 S.Ct. 1524, reh den 421 U.S. 1017, 44 L.Ed.2d 686, 95 S.Ct. 2425.

200

jurisdiction.[4]  Discovery has resulted in numerous depositions including a lengthy one of Mr. Goldsmith.  Tokai Bank's motion also includes affidavits (by Mr. Belliston, a bank official) regarding the Bank's corporate status and business affairs .  The Bank of Saipan and Blair have also placed before the court certain documentary information.

Generally, a motion to dismiss pursuant to Rule 12(b) must be determined upon facts set out in the complaint.  Emmons v. Smitt, (6th Cir., 1945), 149 F.2d 869, 871, cert. den. 326 U.S. 746, 9 L.Ed. 446, 66 S.Ct. 59.  However, the court may consider documents other than the complaint in ruling on a 12(b) motion.  Willford v. California, (9th Cir., 1965), 352 F.2d 474, 475-6.  Questions of whether materials outside the pleadings can qualify as "matters presented" within Rule 12(b) depends on whether such material is of the sort contemplated by Rule 56, Com.R.Civ.Pro., which provides that summary judgments shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact.  These provisions of Rule 56 are definitive and cannot be enlarged by Rule 12(b).  Therefore, the extra-pleading matters presented are required to be either "depositions," "admissions," or "affidavits."  Sardo v. McGrath, (DC Cir., 1952) 196 F.2d 20, 22.

Regarding the affidavit and supplemental affidavit of J. Richard Belliston, the Chief Finance Officer of Tokai Bank

---

[4] Wayne Wright has never been served and apparently his whereabouts are unknown.  The failure to have Wright before the court does not prevent the disposition of Tokai's motion.

of California, these may be considered in ruling on this motion as these affidavits, being sworn before a notary public, are purported to have been made from personal knowledge by an individual competent to testify as a witness to the matters set forth therein.  Further, third party plaintiffs have not objected to the court's considering these affidavits and have even made reference to them in their pleadings.

As to the deposition of Robert Michael Goldsmith, this deposition may be considered by this court as it was taken *before an officer authorized to administer oaths by the laws of the place where the examination was held pursuant to Com.R.Civ.Pro. Rule 28(a)*.  The same is true for the deposition of co-defendant Carlos Camacho.

Regarding the deposition of Thomas Donovan Schoen, Manager of the Bank of Hawaii, Saipan Branch, there may be problems in considering this a "deposition" for purposes of this motion.

First of all, it appears that the provisions of Com.R.Civ.Pro. Rule 30(b)(1) were not complied with in that reasonable notice in writing was not given to every other party to this action.  However, as there is a statement in the document by third party plaintiffs' attorney stating that third party defendants' counsel had "no objection to our going forward" the court will not find this document objectionable on notice grounds.  Counsel for defendant Camacho did object to the taking of the deposition but in view of the fact that this defendant is not directly concerned with this motion, the court will not consider this a defect for purposes of this motion.

**202**

The second point of concern is that the Schoen "deposition" document does not comply with Com.R.Civ.Pro. Rule 28(a) which states in pertinent part that "depositions shall be taken before an officer authorized to administer oaths by the laws of the Northern Mariana Islands...." It appears that Mr. Schoen was sworn in properly by a notary public but the officer swearing him in left before the deposition started. One Maria Luisa M. Bonlongan signed the deposition but court records do not indicate that Ms. Bonlongan is a notary public. Since this document was not taken before an officer authorized to administer oaths, it is doubtful if it can be considered a deposition.

However, to give full consideration to the third party complaint and because third party defendant has not objected to this document, the court will consider all the Schoen statements.

Also, in the interests of fairness to third party plaintiffs, the court will consider the exhibits attached to the affidavit of Lizabeth A. McKibben despite the fact that these have not been certified in a manner required by Rule 56, Com.R.Civ.Proc. Tokai Bank has not objected to this material which includes three letters of credit and excerpts from a document called the Rand McNally International Bankers Directory.

**DOES THIS COURT HAVE IN PERSONAM JURISDICTION OVER TOKAI BANK?**

The Bank of Saipan and Blair base jurisdiction on 7 CMC § 1102(a)(7) and (8) which reads:

**203**

"(a)  Any person, whether or not a citizen or resident of the Commonwealth, who in person or through an agent does any of the acts enumerated in this Section, thereby submits such person, and, if not an individual, its personal representative, to the jurisdiction of the courts of the Commonwealth as to any cause of action arising from the doing of any of the following acts:

.  .  .

(7)  Any act done outside the Commonwealth which causes or results in any harmful impact, injury or damages, including pollution of air, land or water within the Commonwealth; or

(8)  Any other act done within or outside the Commonwealth from which a cause of action arises and for which it would not be unreasonable, unfair or unjust to hold the person doing the act legally responsible in a court of the Commonwealth."

The burden of establishing in personam jurisdiction over a non-resident is on the party seeking it.  KVOS Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 201 (1936); Data Disc., Inc. v. Systems Technology Associates, 557 F.2d 1280, 1285 (9th Cir., 1977).

In any analysis of whether a court has in personam jurisdiction, a two-pronged inquiry must be made.  This consists of applying both the statutory standard as well as constitutional standards.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559 (1980).

The constitutional standard inquiry is the extent, if any, of the "minimum contacts" between the defendant and the forum state.  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**204**

The court turns first to explore the amount and extent of contacts the Tokai Bank had with the Commonwealth of the Northern Mariana Islands.

The Third-Party Complaint alleges, and it is conceded, that Tokai Bank is a California corporation. It is also uncontradicted that the Wright to Goldsmith telephone call was in the State of California.

These activities clearly do not provide "continuous or systematic corporate activities" within the Commonwealth. Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413 (1952); Data Disc. Inc. v. Systems Technology Associates, 557 F.2d 1280, 1287 (9th Cir., 1977). Indeed, the Bank of Saipan and Blair can cite no cases to support general in personam jurisdiction based on these facts.

The thrust of third party plaintiffs' argument regarding general jurisdiction is based upon the statements of Mr. Schoen and certain documents referred to above. Construing this material in a light most favorable to Bank of Saipan and Blair, it can be said that Tokai Bank, defendant herein, is a subsidiary of Tokai Bank Ltd. of Nagoya, Japan (Tokai Bank Japan) with both corporations having the same Chairman of the Board. Tokai Bank Japan was the advising bank for three letters of credit issued by the Bank of Hawaii, Saipan Branch.[5] The shipper of goods (beneficiary of the letters of

_____
5/
The letters of credit show the issuing bank to be the Agana Branch of the Bank of Hawaii and not Saipan. However, Mr. Schoen is the manager of the Saipan Branch and it is noted that the lower right hand corner of the letters of credit have a Saipan receipt notation. Once again, the court will construe the facts most favorable to the third party plaintiffs' position.

credit) was a Japanese firm which apparently shipped $3.6 million dollars of goods to Saipan and the Trust Territories.

The parent-subsidiary connection of Tokai Bank Japan and Tokai Bank of California can quickly be disposed of. A parent corporation's contacts with the forum state are irrelevant in determining whether the court has general personal jurisdiction over a non-resident subsidiary. Fields v. Sedgwick Associated Risks Ltd., 796 F.2d 299, 301-2 (9th Cir. 1986).

Even if this were not the case, the "contacts" of Tokai Bank Japan with the Commonwealth are non-existent. As the advising bank under a letter of credit, Tokai Bank Japan had only the obligation to notify the seller of goods in Japan that the Bank of Hawaii was prepared to extend credit. National American Corporation v. Federal Republic of Nigeria, 425 F.Supp. 1365, 1369 (S.D. NY 1977). See, also H. Ray Baker Inc. v. Associated Banking Corp., 592 F.2d 550, 551 (9th Cir. 1979).

Thus, the assertion that Tokai Bank Japan paid or was paid 3.6 million dollars by the Bank of Hawaii, Saipan branch, is simply erroneous.

The last contention by the Third-Party plaintiffs is that Tokai Bank Japan is an "affiliate" and/or corresponding bank with the Bank of Hawaii. No authority is cited for the proposition that this "relationship" confers in personam jurisdiction over the non-resident bank.[6] Indeed, in a case

---

6/
Bank of Saipan and Blair state in a footnote that: "We take the position that Tokai Bank Ltd. of Nagoya, Japan has a mutual agency relationship with Tokai Bank of California." No authority is cited for this proposition either.

**206**

where the non-resident corresponding bank did much more in the forum state than Tokai Bank Japan, the Supreme Court refused to find jurisdiction over the foreign bank. Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311 (1923).

Bank of Saipan and Blair request that if the court concludes that there is not a sufficient showing of activity by Tokai Bank Japan, in the Commonwealth, that they be allowed more time to discover facts to support their claim of jurisdiction. This request is denied because as will be seen shortly, it would make no difference and further it is deemed that the request is tardy. The Third-Party Complaint was filed on July 22nd and it is obvious that jurisdiction over Tokai Bank of California was an issue that would need to be confronted. Com.R.Civ.Pro. 26(b)(ii) instructs that the court shall limit discovery if the party seeking discovery has had ample opportunity to obtain the information sought. It appears in this case the Bank of Saipan and Blair did not conduct any discovery on the jurisdiction issue until after Tokai Bank filed its motion to dismiss on August 24th - a motion which certainly should have been anticipated.

Turning to the provisions of 7 CMC § 1102 upon which Bank of Saipan and Blair base their claim to personal jurisdiction over Tokai Bank, a fatal flaw is immediately recognized.

7 CMC § 1102(7) and (8) require that an act done outside the Commonwealth cause or result in a harmful injury within the Commonwealth.

**207**

In so far as the act done outside the Commonwealth is concerned, the most that can be gleaned from the pleadings and depositions is that Wright told Goldsmith by telephone in California that Tenorio had a bank account at the Loma Linda branch, it was mid-three figures in amount, and about two years old.[7]

This "act" did not cause the defamation which is the basis of the Tenorio complaint and which translates into the claim of indemnity filed by the Third-Party Complainants. The simple reason for this conclusion is that Wright's communication is not defamatory.

Pursuant to 7 CMC § 3401 the Restatement of the Law is to be followed in the absence of written law or local customary law. Restatement, Second, Torts § 559 defines a defamatory communication as:

> "A communication is defamatory if it tends
> so to harm the reputation of another as to
> lower him in the estimation of the community
> or to deter third persons from associating
> or dealing with him."

Pursuant to Restatement, Second, Torts § 614 the court determines whether a communication is capable of bearing a particular meaning, and whether that meaning is defamatory.

---

[7] The court has reviewed the voluminous depositions of Goldsmith and the one taken of Camacho. Goldsmith testified to the total extent of the Wright communication to him. Goldsmith Deposition, p.22, lines 5-25. Camacho was even less enlightening. He confirmed that Goldsmith told him that the account existed in Tenorio's name. Camacho Deposition, p.12, lines 4-8; p.28, lines 12-13. It is also clear according to Camacho's Deposition that the information about the $4,000 monthly deposit came from Blair. P.12, lines 22-25; p.13, lines 1-2.

208

If Camacho had simply said at the political debate that Tenorio had a California bank account for two years and it was around $500, there would be no basis whatsoever for a defamation suit. It would be ludicrous to conclude that this communication would tend to harm the reputation of Tenorio or to deter others from associating or dealing with him. Those simple facts do not imply or are they capable of conveying a meaning that Tenorio is involved in a bribery, kickback, or other illegal scheme.

The Bank of Saipan and Blair attempt to pull themselves within the terms of 7 CMC § 1102(a)'7) and (8) by arguing that once the bank account was confirmed to be in Tenorio's name, this triggered or caused Camacho to use the actual defamatory communication about the $4,000 monthly deposits from the seller of bad oil even though the source of the defamatory communication came from other sources within the Commonwealth. No authority is cited for such a proposition and, of course, this is not what 7 CMC § 1102 states.

Thus, there is no act done outside the Commonwealth by Tokai Bank or Wright which caused any possible injury to Tenorio and Santos and 7 CMC § 1102 has no application.

Tokai Bank also appropriately points out that since the telephone conversation was all conducted in California, there was no "purposeful availment" by Tokai of the privilege of conducting activities in the Commonwealth. The one telephone call was a random and fortuitous contact which provides no basis for imposing in personam jurisdiction over Tokai Bank.

**209**

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183-2184 (1985).

In view of all the above reasons, it is concluded that it would be unreasonable, unfair, and unjust to declare in personam jurisdiction over Tokai Bank. Under both the constitutional and statutory standards, there is no basis to say this court has jurisdiction over Tokai Bank.

IT IS ORDERED that the Third-Party Complaint of Bank of Saipan and Sid Blair against Tokai Bank of California be and the same is hereby dismissed for lack of jurisdiction.

Dated at Saipan, CM, this 2nd day of November, 1987.

_____
Robert A. Hefner, Chief Judge