UNITED STATES *v.* MISSISSIPPI ET AL.

No. 73.   Argued January 26, 1965.—Decided March 8, 1965.

*Solicitor General Cox* argued the cause for the United States. With him on the brief were *Assistant Attorney General Marshall, Louis F. Claiborne, Harold H. Greene, David Rubin, Howard A. Glickstein* and *J. Harold Flannery.*

*Charles Clark,* Special Assistant Attorney General of Mississippi, argued the cause for appellees. With him on the briefs were *Joe T. Patterson,* Attorney General of Mississippi, *Dugas Shands,* Assistant Attorney General, *P. M. Stockett,* Special Assistant Attorney General, and *Aubrey Bell.*

.

*Francis Biddle, Norman Dorsen* and *Melvin L. Wulf* filed a brief for the American Civil Liberties Union, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The United States by the Attorney General brought this action in the United States District Court for the Southern District of Mississippi, Jackson Division, against the State of Mississippi, the three members of the Mississippi State Board of Election Commissioners, and six county Registrars of Voters. The complaint charged that the defendants and their agents had engaged and, unless restrained, would continue to engage in acts and practices hampering and destroying the right of Negro citizens of Mississippi to vote, in violation of 42 U. S. C. § 1971 (a) (1958 ed.), and of the Fourteenth [1] and Fifteenth [2] Amendments and Article I of the United States Constitution. Jurisdiction of the Court was invoked under 42 U. S. C. § 1971 (d) (1958 ed.) and 28 U. S. C. § 1345 (1958 ed.), and because the complaint charged that provisions of the state constitution and statutes pertaining to voter registration violated the United States Con-

---

[1] United States Constitution, Amendment XIV, provides in part:

"SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] United States Constitution, Amendment XV, provides:

"SECTION 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

"SECTION 2. The Congress shall have power to enforce this article by appropriate legislation."

stitution, the case was heard by three judges, pursuant to 28 U. S. C. § 2281 (1958 ed.). All the defendants moved to dismiss on the ground that the complaint failed to state a claim on which relief could be granted. In addition the State moved separately to dismiss on the ground that the United States had no power to make it a defendant in such a suit, and the three Election Commissioners answered that the complaint failed to show that they had enforced or that they had a duty to enforce the provisions of state law alleged to be unconstitutional. Five of the registrars moved for a severance and separate trials, and the four who were not residents of the Southern District of Mississippi, Jackson Division, moved for changes of venue to the respective districts and divisions where they lived. The District Court in an opinion by the late Circuit Judge Cameron, in which District Judge Cox joined,[3] dismissed the complaint on all the grounds which the defendants had assigned and also ruled that the registrars could not be sued jointly and that venue was improper as to the registrars who did not live in the district and division in which the court was sitting. 229 F. Supp. 925. Circuit Judge Brown dissented. We noted probable jurisdiction, 377 U. S. 988, and set the case down for argument immediately preceding *Louisiana* v. *United States, post,* p. 145.

The basic issue before us in this case is whether the dismissal for failure to state a claim upon which relief could be granted was proper. The United States alleges that in 1890 a majority of the qualified voters in Mississippi were Negroes, but that in that year a constitutional convention adopted a new state constitution, one of the chief purposes of which was, in the words of the complaint, to "restrict the Negro franchise and to establish and perpetuate white political supremacy and racial segregation

---

[3] Judge Cox also wrote a separate concurring opinion.

132

in Mississippi." Section 244 of that constitution established a new prerequisite for voting: that a person otherwise qualified be able to read any section of the Mississippi Constitution, *or* understand the same when read to him, *or* give a reasonable interpretation thereof.[4] This new requirement, coupled with the fact that until about 1952 Negroes were not eligible to vote in the primary election of the Democratic Party, victory in which was "tantamount to election," worked so well in keeping Negroes from voting, the complaint charges, that by 1899 the percentage of qualified voters in the State who were Negroes had declined from over 50% to about 9%, and by 1954 only about 5% of the Negroes of voting age in Mississippi were registered.

By the 1950's a much higher proportion of Negroes of voting age in Mississippi was literate than had been the case in 1890, and since a decision of the Fifth Circuit in 1951[5] had pointed out that the 1890 requirement allowed persons to vote if they met any one of the three alternative requirements, the State took steps to multiply the barriers keeping its Negro citizens from voting. In 1954 the state constitution was amended to provide that thereafter an applicant for registration had to be able to read and copy in writing any section of the Mississippi Constitution, *and* give a reasonable interpretation of that section to the county registrar, *and,* in addition, demonstrate to the registrar "a reasonable understand-

---

[4] Section 244 of the Mississippi Constitution of 1890 provided:

"On and after the first day of January, A. D., 1892, every elector shall, in addition to the foregoing qualifications, be able to read any section of the constitution of this State; or he shall be able to understand the same when read to him, or give a reasonable interpretation thereof. A new registration shall be made before the next ensuing election after January the first, A. D., 1892."

[5] *Peay* v. *Cox,* 190 F. 2d 123, 126 (C. A. 5th Cir.), cert. denied, 342 U. S. 896.

ing of the duties and obligations of citizenship under a constitutional form of government."[6] The complaint charges that these provisions lend themselves to misuse and to discriminatory administration because they leave the registrars completely at large, free to be as demanding or as lenient as they choose in judging an applicant's understanding of the state constitution and of the "duties and obligations of citizenship," and that since the adoption of this amendment the registrars have in fact applied standards which varied in difficulty according to whether an applicant was white or colored.

In 1960 the state constitution was amended to add a new voting qualification of "good moral character,"[7] an addition which it is charged was to serve as yet another device to give a registrar power to permit an applicant to vote or not, depending solely on the registrar's own whim or caprice, ungoverned by any legal standard. A statute also passed in 1960[8] repealed a prior Mississippi statute which had provided that application forms be retained as permanent public records, and adopted a new rule that unless appeal is taken from an adverse ruling and no new application is made prior to final judgment on that

---

[6] As amended § 244 of the Mississippi Constitution reads in part:

"Every elector shall, in addition to the foregoing qualifications be able to read and write any section of the Constitution of this State and give a reasonable interpretation thereof to the county registrar. He shall demonstrate to the county registrar a reasonable understanding of the duties and obligations of citizenship under a constitutional form of government. . . ."

[7] Section 241–A of the Mississippi Constitution provides:

"In addition to all other qualifications required of a person to be entitled to register for the purpose of becoming a qualified elector, such person shall be of good moral character.

"The Legislature shall have the power to enforce the provisions of this section by appropriate legislation."

[8] Miss. Laws 1960, c. 449, Miss. Code Ann. § 3209.6 (1962 Cum. Supp.).

134

appeal, registrars no longer need keep any record made in connection with the application of anyone to register to vote. This law is alleged to be in direct violation of Title III of the Civil Rights Act of 1960, which requires that records of voting registration be kept.[9] The complaint alleged further that the defendants had destroyed and unless restrained by the court would continue to destroy these records. Finally, it was alleged that in 1962 the Mississippi Legislature adopted a package of legislation [10] affecting registration, the purpose and effect of which was to "deter, hinder, prevent, delay and harass Negroes and to make it more difficult for Negroes in their efforts to become registered voters, to facilitate discrimination against Negroes, and to make it more difficult for the United States to protect the right of all its citizens to vote without distinction of race or color." These 1962 laws provide, among other things, that application forms must be filled out "properly and responsively" by the applicant without any assistance, and that a registrar may not tell an applicant why he failed the test because

[9] 74 Stat. 88, 42 U. S. C. §§ 1974–1974e (1958 ed., Supp. V).

[10] Miss. Laws 1962, c. 569, § 1, Miss. Code Ann. § 3209.6 (1962 Cum. Supp.) (requiring that application forms provide that applicants demonstrate "good moral character" and that registrars observe this requirement); Miss. Laws 1962, c. 570, Miss. Code Ann. § 3213 (1962 Cum. Supp.) (requiring applicants to fill in all blanks on the application form "properly and responsively" without any assistance); Miss. Laws 1962, c. 571, Miss. Code Ann. § 3212.5 (1962 Cum. Supp.) (prohibiting registrars from telling an applicant why he was rejected, "as so to do may constitute assistance to the applicant on another application"); Miss. Laws 1962, c. 572, Miss. Code Ann. § 3212.7 (1962 Cum. Supp.) (requiring newspaper publication of applicants' names); Miss. Laws 1962, c. 573, Miss. Code Ann. §§ 3217–01—3217–15 (1962 Cum. Supp.) (providing for challenge by any voter of an applicant's qualifications to vote); Miss. Laws 1962, c. 574, Miss. Code Ann. § 3232 (1962 Cum. Supp.) (eliminating designation of race in county poll books).

to do so might constitute assistance, and they allegedly give registrars even greater discretion to deny Negroes the right to register on formal, technical, inconsequential errors.[11]

By way of relief the court was asked (1) to declare the challenged state laws unconstitutional as violations of federal constitutional provisions and statutes; (2) to find that by these laws Negroes had been denied the right to vote pursuant to a "pattern and practice" of racial discrimination; [12] (3) to enjoin the defendants from enforcing any of these state laws or in any other way acting to "delay, prevent, hinder, discourage, or harass Negro citizens, on account of their race or color, from applying for registration and becoming registered voters in the State of Mississippi," or using any other interpretation or understanding test which "bears a direct relationship to the quality of public education afforded Negro applicants"; and (4) to order the defendants to register any Negro applicant who is over age 21, able to read, a resident for the period of time prescribed by state law, and not disqualified by state laws disfranchising the insane and certain convicted criminals.

It is apparent that the complaint which the majority of the District Court dismissed charged a long-standing, carefully prepared, and faithfully observed plan to bar Negroes from voting in the State of Mississippi, a plan which the registration statistics included in the complaint

[11] Miss. Laws 1962, c. 570, Miss. Code Ann. § 3213 (1962 Cum. Supp.), is claimed by the Government to have had the latter effect. In its brief in this Court the Government argues that this provision is invalid on its face as contrary to § 101 (a) of the Civil Rights Act of 1964, 78 Stat. 241, amending § 131 of the Civil Rights Act of 1957, 71 Stat. 637, 42 U. S. C. § 1971 (a) (1958 ed.).

[12] Such a finding would by force of 42 U. S. C. § 1971 (e) (1958 ed., Supp. V) authorize a court to make an order declaring that a person denied the right to vote because of color is entitled to vote.

would seem to show had been remarkably successful. This brings us to a consideration of the specific grounds assigned by the District Court for its dismissal.

## I.

One ground upon which the majority of the District Court dismissed the Government's complaint was that the United States is without authority, absent the clearest possible congressional authorization, to bring an action like this one which challenges the validity of state laws allegedly used as devices to keep Negroes from voting on account of their race. We need not discuss the power of the United States to bring such an action without authorization by Congress, for in 42 U. S. C. § 1971 (1958 ed.) there is express congressional authorization for the United States to file a suit precisely of this kind. Section 1971 (a) guarantees the right of citizens "who are otherwise qualified by law to vote at any election" to be allowed to vote "without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding." [13] And subsection (c) of § 1971 specifically authorizes the Attorney General to file proper proceedings for preventive relief to protect this right to vote without discrimination on account of color whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would

---

[13] "All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish,. township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding." Act of May 31, 1870, 16 Stat. 140, 42 U. S. C. § 1971 (a) (1958 ed.).

deprive any other person of that right.[14]   The District Court's holding that despite the clear language quoted above the United States still was not authorized to file this suit seems to rest on the emphasis it places on the phrase "otherwise qualified by law" in § 1971 (a).   By stressing these words the majority below reached the conclusion that if Negroes were kept from voting by state laws, even though those laws were unconstitutional, instead of being barred by unlawful discriminatory application of laws otherwise valid, then they were not "otherwise qualified" and so § 1971 did not apply to them.   In other words, while private persons might file suits under § 1971 against individual registrars who discriminated in applying otherwise valid laws, and while such suits might even be filed by the Government, see *United States* v. *Raines*, 362 U. S. 17, the statute did not authorize the United States to bring suits challenging the validity of the State's voting laws as such, however discriminatory they might be.   We can find no possible justification for

---

[14] 74 Stat. 90, 42 U. S. C. § 1971 (c)  (1958 ed., Supp. V), provides:

"Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order.   In any proceeding hereunder the United States shall be liable for costs the same as a private person.

"Whenever, in a proceeding instituted under this subsection any official of a State or subdivision thereof is alleged to have committed any act or practice constituting a deprivation of any right or privilege secured by subsection (a) of this section, the act or practice shall also be deemed that of the State and the State may be joined as a party defendant and, if, prior to the institution of such proceeding, such official has resigned or has been relieved of his office and no successor has assumed such office, the proceeding may be instituted against the State."

such a construction of § 1971 (a) and § 1971 (c). Subsection (a) explicitly stated the legislative purpose of protecting the rights of colored citizens to vote notwithstanding "any constitution, law, custom, usage, or regulation of any State." The phrase "otherwise qualified by law to vote" obviously meant that Negroes must possess the qualifications required of all voters by *valid* state or federal laws. It is difficult to take seriously the argument that Congress intended to dilute its guarantee of the right to vote regardless of race by saying at the same time that a State was free to disqualify its Negro citizens by laws which violated the United States Constitution. Cf. *Neal* v. *Delaware*, 103 U. S. 370. The Fifteenth Amendment protects the right to vote regardless of race against any denial or abridgment by the United States or by any State. Section 1971 was passed by Congress under the authority of the Fifteenth Amendment to enforce that Amendment's guarantee, which protects against any discrimination by a State, its laws, its customs, or its officials in any way. We reject the argument that the Attorney General was without power to institute these proceedings in order to protect the federally guaranteed right to vote without discrimination on account of color.

## II.

The District Court held, and it is contended here, that even if the Attorney General did have power to file this suit on behalf of the United States, as we have held he did, nevertheless he was without power to make the State a party defendant. The District Court gave great weight to Mississippi's argument that the Fifteenth Amendment "is directed to persons through whom a state may act and not to the sovereign entity of the state itself." 229 F. Supp., at 933. Largely to avoid what it called this "substantial constitutional claim," the District Court proceeded to construe the language of § 1971 as not granting

the Attorney General authority to make the State a defendant. We do not agree with that construction.

Section 1971 (c) says that whenever the Attorney General institutes a suit under this section against a state official who has deprived a citizen of his right to vote because of race or color,

> "the act or practice shall also be deemed that of the State and the State may be joined as a party defendant and, if, prior to the institution of such proceeding, such official has resigned or has been relieved of his office and no successor has assumed such office, the proceeding may be instituted against the State."

The District Court accepted the State's argument that this meant that a State can be made a defendant in such a case only when the office of registrar is vacant, so that there is no registrar against whom to file suit. This argument relies on the fact that in a case pending in this Court when the statutory language was changed, registrars had resigned their offices in order to keep from being sued under § 1971. *United States* v. *Alabama,* 267 F. 2d 808 (C. A. 5th Cir.), vacated and remanded, 362 U. S. 602. Congress, the State says, passed the provision authorizing suit against a State solely to provide a party defendant when registrars resigned, as they had in the *Alabama* case. But whatever the reasons Congress had for amending § 1971 (c), and without our now deciding whether it was necessary to do so to permit the United States to sue a State under that section, the language Congress adopted leaves no room for the construction which the District Court put on these provisions. Indeed, on remand in the *Alabama* case the Fifth Circuit affirmed the District Court's refusal to dismiss the State as a defendant even though new registrars had qualified, and this Court affirmed that judgment. *Alabama* v. *United States,* 371 U. S. 37, affirming 304 F. 2d 583 (C. A. 5th Cir.).

The State argues also that even if Congress has authorized making the State a defendant here, as we hold it has, Congress had no constitutional power to do so. The Fifteenth Amendment in plain, unambiguous language provides that no "State" shall deny or abridge the right of citizens to vote because of their color. In authorizing the United States to make a State a defendant in a suit under § 1971, Congress was acting under its power given in § 2 of the Fifteenth Amendment to enforce that Amendment by appropriate legislation. The State's argument that Congress acted here beyond its constitutional power is based on a number of cases that have allowed private individuals to enjoin state officials from denying constitutional rights, while recognizing that without its consent a State could not be sued by private persons in such circumstances, because of the immunity given the State in the Eleventh Amendment. See, *e. g., Ex parte Young,* 209 U. S. 123. But none of these cases decided or even suggested that Congress could not authorize the United States to institute legal proceedings against States to protect constitutional rights of citizens. The Eleventh Amendment in terms forbids suits against States only when "commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." While this has been read to bar a suit by a State's own citizen as well, *Hans* v. *Louisiana,* 134 U. S. 1, nothing in this or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States. The United States in the past has in many cases been allowed to file suits in this and other courts against States, see, *e. g., United States* v. *Texas,* 143 U. S. 621; *United States* v. *California,* 297 U. S. 175, with or without specific authorization from Congress, see *United States* v. *California,* 332 U. S. 19, 26–28. See also *Parden* v. *Terminal R. Co.,* 377 U. S. 184. In light of this history, it seems rather sur-

prising that the District Court entertained seriously the argument that the United States could not constitutionally sue a State. The reading of the Constitution urged by Mississippi is not supported by precedent, is not required by any language of the Constitution, and would without justification in reason diminish the power of courts to protect the people of this country against deprivation and destruction by States of their federally guaranteed rights. We hold that the State was properly made a defendant in this case.

### III.

The District Court held with respect to the three members of the Mississippi Board of Election Commissioners that the complaint failed to show that they had a sufficient interest in administering or enforcing the laws under attack to permit making them parties defendant. We do not agree. Under state law the Election Commissioners have power, authority, and responsibility to help administer the voter registration laws by formulating rules for the various tests applied to applicants for registration. Section 3209.6 of the Mississippi Code directs that the forms and the questions on the forms shall be prepared and maintained under the supervision of the Election Board and that these application forms shall be

"designed to test the ability of applicants for registration to vote to read and write any section of the Constitution of this state and give a reasonable interpretation thereof, and demonstrate to the county registrar a reasonable understanding of the duties and obligations of citizenship under a constitutional form of government; and to demonstrate to the county registrar that applicant is a person of good moral character as required by Section 241–A of the Constitution of Mississippi."

These "interpretation" and "duties and obligations of citizenship" tests, as has been pointed out, are vitally important elements of the Mississippi laws challenged as unconstitutional in this suit. Should the Government prove its case and obtain an injunction, it would be natural to assume that such an order should run against the Board of Election Commissioners with reference to these two tests. Therefore the Election Commissioners should not have been stricken as defendants.

## IV.

The District Court said that the complaint improperly attempted to hold the six county registrars jointly liable for what amounted to nothing more than individual torts committed by them separately with reference to separate applicants. For this reason apparently it would have held the venue improper as to the three registrars who lived outside the Southern District of Mississippi and a fourth who lived in a different division of the Southern District, and it would have ordered that each of the other two registrars be sued alone. But the complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20 (a) of the Federal Rules of Civil Procedure, which provides:

> ". . . All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action."

These registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended to a large extent upon "question[s] of law or fact common to all of them." Since joinder of the registrars in one suit was proper, the argument that venue as to some of them was not properly laid is also without merit. 28 U. S. C. §§ 1392 (a), 1393 (b) (1958 ed.).

## V.

As a general ground for dismissal, the District Court held that the complaint failed to state a claim upon which relief could be granted. In considering the correctness of this ruling the allegations of the complaint are to be taken as true, and indeed the record contains answers to pre-trial interrogatories which indicate that the United States stands ready to produce much evidence tending to prove the truthfulness of all the allegations in the complaint. While the Government has argued that several provisions of the Mississippi laws challenged here might or should be held unconstitutional on their face without introduction of evidence or further hearings, with respect to all the others the Solicitor General in this Court specifically has declined to "urge that the constitutionality of these provisions be decided prior to trial." In this situation we have decided that it is the more appropriate course to pass only upon the sufficiency of the complaint's allegations to justify relief if proved.

We have no doubt whatsoever that it was error to dismiss the complaint without a trial. The complaint charged that the State of Mississippi and its officials for the past three quarters of a century have been writing and adopting constitutional provisions, statutes, rules, and regulations, and have been engaging in discriminatory practices, all designed to keep the number of white voters at the highest possible figure and the number of colored voters at the lowest. It alleged that the common pur-

pose running through the State's legal and administrative history during that time has been to adopt whatever expedient seemed necessary to establish white political supremacy in a completely segregated society. This purpose, indeed, was recognized by the Mississippi Supreme Court in 1896 when it said, speaking of the convention which adopted the 1890 constitution:

> "Within the field of permissible action under the limitations imposed by the federal constitution, the convention swept the circle of expedients to obstruct the exercise of the franchise by the negro race." [15]

The success of the expedients adopted in 1890 and in later years to accomplish this purpose appears from statistics in the complaint. For example, the complaint states that at the time the suit was filed Amite County, Mississippi, the registrar of which was one of the defendants here, had a white voting age population of 4,449 with white registration of 3,295, while it had 2,560 colored persons of voting age, of whom only one was a registered voter. There is no need to multiply examples. The allegations of this complaint were too serious, the right to vote in this country is too precious, and the necessity of settling grievances peacefully in the courts is too important for this complaint to have been dismissed. Compare *Davis* v. *Schnell*, 81 F. Supp. 872 (D. C. S. D. Ala.), aff'd, 336 U. S. 933; *Louisiana* v. *United States, post,* p. 145, this day decided. The case should have been tried. It should now be tried without delay.

*Reversed and remanded.*

MR. JUSTICE HARLAN considers that the constitutional conclusions reached in this opinion can properly be based only on the provisions of the Fifteenth Amendment. In all other respects, he fully subscribes to this opinion.

---

[15] *Ratliff* v. *Beale*, 74 Miss. 247, 266, 20 So. 865, 868.