CONCERNED CITIZENS OF NEBRASKA (CCN), Ronald Schumann, Lowell Fisher, Diane Burton, David Follrichs, Appellants,

v.

UNITED STATES NUCLEAR REGULATORY COMMISSION (NRC), Dennis Grams, Director of the Nebraska Department of Environmental Control (NDEC), Central Interstate Low–Level Radioactive Waste Compact Commission, US Ecology, Inc. (USE), Appellees.

No. 91–2784.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1992.

Decided July 6, 1992.

Rehearing Denied Aug. 17, 1992.

Charles Hahn, Auburn, Neb., argued, for appellants.

Alan Peterson, Lincoln, Neb., and Jeffrey Kehne, Dept. of Justice, Washington, D.C., argued (Steven Seglin and Shawn Renner, Lincoln, Neb., Susan Fonner, Louise Milkman and J. Carol Williams, NRC, Washington, D.C., Linda Willard, Asst. Atty. Gen., Lincoln, Neb., on the briefs), for appellees.

\* The HONORABLE WILLIAM L. HUNGATE, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Since we heard oral arguments in the present case, the Supreme Court has held a provision of the LLRW Amendments unconstitutional. *See New York v. United States,* — U.S. —, — — —, 112 S.Ct. 2408, 2440, 120 L.Ed.2d 120

Before JOHN R. GIBSON and BEAM, Circuit Judges, and HUNGATE,\* District Judge.

BEAM, Circuit Judge.

Concerned Citizens of Nebraska, an unincorporated, nonprofit organization, and four of its members (collectively "CCN") filed suit in district court seeking to stop the development of a regional low-level radioactive waste disposal facility in Boyd County, Nebraska. CCN asserted numerous claims against a variety of defendants. In two separate orders, each addressing a different group of defendants, the district court dismissed CCN's complaint. CCN appeals as to several, but not all, of its allegations. We reverse the district court to the extent that it did not have jurisdiction to hear one of CCN's claims. As to CCN's remaining claims, we affirm.

## I. BACKGROUND

In 1980, Congress enacted the Low–Level Radioactive Waste Policy Act (LLRW Act), Pub.L. No. 96–573, 94 Stat. 3347 (1980) (amended 1986), to promote the development of regional low-level radioactive waste disposal facilities. Pursuant to the LLRW Act, Nebraska and four other states entered the Central Interstate Low–Level Radioactive Waste Compact (Compact) and requested congressional approval of the Compact. In 1986, Congress approved the Compact under the Omnibus Low–Level Radioactive Waste Interstate Compact Consent Act, Pub.L. No. 99–240, tit. II, sec. 222, 99 Stat. 1859, 1863 (1986). At the same time, Congress amended the LLRW Act by enacting the Low–Level Radioactive Waste Policy Amendments Act of 1985 (LLRW Amendments), Pub.L. No. 99–240, tit. I, 99 Stat. 1842 (1986) (codified at 42 U.S.C. §§ 2021b–2021j (1988)).[1]

(1992) (take title provision, 42 U.S.C. § 2021e(d)(2)(C) (1988), violates the Tenth Amendment). The Supreme Court also held that the provision was severable from the remainder of the statute. *Id.,* — U.S. at — — —, 112 S.Ct. at 2434. The Court's decision in *New York v. United States* does not affect any of the issues raised in this appeal.

The Compact established the Central Interstate Low–Level Radioactive Waste Compact Commission (Compact Commission) as its governing body. The Compact Commission designated Nebraska as the host state for the disposal facility and selected Boyd County as the facility's site. The Compact Commission contracted with US Ecology, Inc., a private corporation, to develop and operate the facility. Current plans for the facility permit the disposal of low-level radioactive waste and mixed waste, low-level radioactive waste also containing non-radioactive hazardous substances. Current plans also permit the limited release of low-level radiation into the surrounding environment. The Environmental Protection Agency (EPA) has approved the disposal of mixed waste at the Boyd County facility, and performance standards established by the United States Nuclear Regulatory Commission (NRC) and the Nebraska Department of Environmental Control (NDEC) do not require complete containment of radiation at low-level waste disposal facilities. See 53 Fed.Reg. 38950 (Oct. 4, 1988); 10 C.F.R. § 61.41 (1992); Neb.Admin.R. & Regs. tit. 194, ch. 4, § 002 (1988). The NDEC regulations, however, establish an objective of zero-release. See Neb.Admin.R. & Regs. tit. 194, ch. 4, § 001 (1988). The Boyd County facility cannot begin operations until it receives a license from the NDEC.

In an attempt to stop development of the Boyd County facility, CCN filed suit in district court, asserting numerous claims against various defendants, including multiple constitutional challenges to certain NRC regulations. Each of the defendants, except for the NRC, moved for dismissal of CCN's claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. The district court granted these motions. The NRC moved for dismissal on the pleadings under Fed. R.Civ.P. 12(c). As part of its motion, the NRC argued that the district court lacked jurisdiction to hear CCN's claims challenging its regulations. The district court rejected the NRC's jurisdictional argument, but granted the agency summary judgment.[2]

CCN appeals the district court's dismissal of the following claims: (1) that the NRC and NDEC performance standards permit the release of radiation from the Boyd County facility, violating a fundamental right of CCN's members to be free of non-natural radiation;[3] (2) that the federal and state radioactive waste classification systems allow the disposal of low-level waste in facilities subject to less stringent containment standards than those for high-level waste facilities, violating the equal protection guarantees of the Fifth and Fourteenth Amendments; (3) that the NRC and NDEC performance standards for the Boyd County facility conflict with federal statutory authority, violating the constitutional principle of separation of powers and the Supremacy Clause, respectively; and (4) that Nebraska statutory law permitting the disposal of mixed waste at the Boyd County facility conflicts with federal statutory law, violating the Supremacy Clause.

## II.  DISCUSSION

### A.  Jurisdiction

Before determining whether the district court erred in dismissing CCN's claims, we must first address the NRC's contention that the district court lacked jurisdiction to hear CCN's claims challenging NRC regulations. CCN formulates all of its claims in constitutional terms. As the following discussion reveals, we agree with the NRC's jurisdictional argument to the extent that we find that one of CCN's claims is statutory and not constitutional.

**2.** In ruling on the NRC's motion, the district court considered materials beyond the pleadings and, therefore, properly treated the motion as one for summary judgment pursuant to Rule 56. See Fed.R.Civ.P. 12(c).

**3.** CCN also argues on appeal that even if the minimum regulatory performance standards are constitutional, the Boyd County facility will not meet these standards. CCN first attempted to assert this claim in its second amended complaint. Although the district court permitted CCN to amend its complaint in certain respects, the court denied leave to add this claim. Because CCN has not appealed this decision of the district court, the claim is not before us.

CCN asserts multiple challenges to various NRC regulations. Initially, CCN contends that the NRC performance standards for low-level radioactive waste conflict with the provisions of the LLRW Amendments.[4] CCN casts what would otherwise appear to be a statutory claim as a constitutional wrong by arguing that the NRC has violated the separation of powers doctrine. CCN also asserts that the NRC performance standards for low-level waste violate a fundamental right of its members to be free of non-natural radioactive waste, which right is protected by the Ninth Amendment, and that the differences between the NRC performance standards for high-level and low-level waste violate the equal protection guarantees embodied in the Fifth Amendment.[5]

The NRC responds by arguing that the Atomic Energy Act of 1954 (AEA), 42 U.S.C. §§ 2011–2296 (1988), precludes CCN from challenging the regulations in district court. The regulations in issue were established by the NRC pursuant to its rulemaking authority under the AEA. The AEA governs challenges to final orders stemming from "any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees." *Id.* § 2239(a)(1). Under the AEA's provisions, the sole method of challenging a final order is to file a petition for review with the court of appeals within sixty days of the order's entry. *See id.* § 2239(b) (referring to appeal procedures contained in the Administrative Orders Review (Hobbs) Act, 28 U.S.C. §§ 2341–2351 (1988)).[6]

The district court rejected the NRC's arguments and concluded that it had jurisdiction over CCN's claims. The court initially ruled that the AEA did not apply because none of the parties to the litigation was a licensee. The court then held that it had federal question jurisdiction under 28 U.S.C. § 1331 because all of CCN's challenges to the regulations were constitutional in nature.

We disagree with this analysis. Although no licensee is involved in the present litigation, the regulations in issue deal with the activities of licensees. The regulations govern the development and operation of low-level radioactive waste disposal facilities, which must receive licenses from the NRC or a state agency administering a regulatory program compatible with the NRC's before accepting waste. Section 2239(a)(1) of the AEA speaks to the nature of the challenged order, not the parties involved. Thus, the fact that the Boyd County facility has yet to become licensed is irrelevant. *Cf. Union of Concerned Scientists v. Nuclear Regulatory Comm'n,* 920 F.2d 50 (D.C.Cir.1990) (Hobbs Act review of non-licensee's challenges to NRC regulations concerning licensing procedures).

The AEA's provisions, however, do not necessarily apply to all of CCN's claims against the NRC regulations. In *Simmons v. Arkansas Power & Light Co.,* 655 F.2d 131 (8th Cir.1981), we recognized a distinction between claims that allege the NRC has failed to comply with a statute and claims that assert the NRC has directly violated the Constitution. The *Simmons* court declined to address various claims against the NRC based on the AEA, holding that the district court lacked jurisdiction over such claims. The plaintiffs only avenue to enforce the statute was to follow the appropriate administrative procedures. *Id.* at 134. The court, however, did address claims against the NRC based directly on

---

4. CCN alleges that the failure of the performance standards to impose a zero-release requirement conflicts with the provision of the LLRW Amendments dictating "permanent isolation" of radioactive waste. *Compare* 10 C.F.R. § 61.41 (1991) *with* 42 U.S.C. § 2021b(7) (1988). The district court resolved this issue of statutory interpretation against CCN on its merits.

5. These two arguments are discussed in greater detail below.

6. On appeal, the NRC notes that although the period for challenging the original NRC orders establishing the contested regulations had passed by the time CCN filed its suit, CCN still could have petitioned for revision of the orders and appealed an unfavorable NRC response to the court of appeals. *See, e.g., Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152 (D.C.Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990).

the Constitution, implying that the district court had jurisdiction over such claims. *See id.* This distinction is consistent with the Supreme Court's decision in *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.").

In the present case, therefore, the district court's jurisdiction over a particular claim against the NRC regulations turns on whether the claim essentially is based on a statute or the Constitution. Under this standard, the district court did not have jurisdiction over CCN's claim that the NRC performance standards fail to comply with the LLRW Amendments. Although CCN attempts to cast this as a constitutional claim, it is merely a claim for enforcement of the statute. To hold otherwise, would permit litigants to avoid the statutory requirements of the AEA through inventive pleading. As such, CCN must follow the appropriate administrative procedures for challenging the NRC regulations on this ground. In contrast, the district court did have jurisdiction over CCN's Ninth Amendment and equal protection claims, because these claims are based directly on the Constitution.

**B. CCN's Claims**

Because we hold that the district court did not have jurisdiction over CCN's statutory claim against the NRC regulations, we need only address the district court's dismissal of CCN's allegations that the NDEC regulations and Nebraska statutory law violate the Supremacy Clause by failing to comply with federal statutes and that the NRC and NDEC regulations violate a fundamental right to be free of non-natural radiation and the Constitution's equal protection guarantees.

■ Our review of the district court's dismissals under Rule 12(b)(6) is de novo. *E.g., Hilton v. Pine Bluff Pub. Schools,* 796 F.2d 230, 231 (8th Cir.1986); *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss should be granted only if it is clear that no relief could be granted

under any set of factual allegations. *E.g., Morton,* 793 F.2d at 187. "We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *E.g., id.* (citing *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965)). In reviewing the district court's dismissal based on summary judgment under Rule 56, we apply the same standard as the district court. *E.g., Meyer v. Barnes,* 867 F.2d 464, 466 (8th Cir.), *cert. denied,* 493 U.S. 825, 110 S.Ct. 86, 107 L.Ed.2d 51 (1989). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### 1. *Supremacy Clause Claims*

■ CCN argues the district court erred in dismissing its claims alleging that NDEC regulations and a Nebraska statute violate the Supremacy Clause by failing to comply with the directives of the LLRW Amendments and the Resource Conservation and Recovery Act (RCRA) of 1976, 42 U.S.C. §§ 6901–6986 (1988). In particular, CCN asserts that the NDEC regulations conflict with the LLRW Amendments by failing to impose a zero-release standard on the Boyd County facility, *compare* Neb.Admin.R. & Regs. tit. 194, ch. 4, § 002 (1988) *with* 42 U.S.C. § 2021b(7) (1988), and Nebraska statutory law conflicts with the RCRA and EPA regulations established pursuant to it by permitting the disposal of mixed waste at the facility, *compare* Neb.Rev.Stat. § 81–15,101.05 (Supp.1990) *with* 42 U.S.C. § 6924 (1988); 40 C.F.R. pt. 264 (1991).

In the present case, however, the district court was precluded from finding a violation of the Supremacy Clause. The NDEC regulations and the Nebraska statute comply with interpretations of the LLRW Amendments and the RCRA by federal administrative agencies and no challenges to these agency interpretations were properly before the court. Initially, we note that the NDEC regulations do not conflict with the NRC regulations interpreting the

LLRW Amendments. *Compare* Neb.Admin.R. & Regs. tit. 194, ch. 4, § 002 (1988) *with* 10 C.F.R. § 61.41 (1992). If anything, the NDEC regulations are more stringent than those of the NRC, because they establish an objective of zero-release. *See* Neb.Admin.R. & Regs. tit. 194, ch. 4, § 001 (1988). As to the Nebraska statute, the EPA approved disposal of mixed waste at the Boyd County facility, certifying that Nebraska's hazardous waste management program met "all of the statutory and regulatory requirements established by RCRA." *See* 53 Fed.Reg. 38950, 38951 (Oct. 4, 1988). The NDEC regulations and the Nebraska statute, therefore, comply with federal administrative law.

As discussed above, the district court lacked jurisdiction to review the NRC's interpretation of the LLRW Amendments, and CCN never challenged the EPA's approval of Nebraska's hazardous waste management program. As such, the validity of these agency decisions were never before the district court. Until these agency decisions are held invalid, however, they have the same force as federal statutes and are the law of the land. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). By complying with the decisions of federal agencies, the NDEC regulations and the Nebraska statute comply with federal law and, hence, the requirements of the Supremacy Clause. *See Florida Lime & Avocado Growers, Inc.,* 373 U.S. at 142–43, 83 S.Ct. at 1217–18. Were we to hold otherwise, we would undermine the very uniformity between state and federal law that the Supremacy Clause seeks to insure. The district court, therefore, properly dismissed CCN claims based on the Supremacy Clause.

2. *Ninth Amendment*

■ CCN also asserts that district court erred in dismissing its claim based on the Ninth Amendment. According to CCN, the proposed Boyd County facility will release low-level radiation into the surrounding environment violating the fundamental right of its members to be free of non-natural radiation. CCN asserts that this unenumerated right is protected under the Constitution through the Ninth Amendment. CCN does not argue that the right to be free of non-natural radiation stems from the Ninth Amendment itself. CCN merely contends that the Ninth Amendment accords constitutional protection to fundamental, unenumerated rights, of which this is one. Even if CCN's characterization of the Ninth Amendment's role in our constitutional system is correct, we do not agree that its members have a fundamental right to an environment free of non-natural radiation.[7]

To be considered fundamental, an unenumerated right must be "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) (Powell, J.); *Bowers v. Hardwick,* 478 U.S. 186, 192, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986); *Henne v. Wright,* 904 F.2d 1208, 1215 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 692, 112 L.Ed.2d 682 (1991). Since the advent of the nuclear age and the enactment of the AEA in the early 1950's, our society has chosen to develop and use nuclear power. This decision reflects a balancing of the advantages of nuclear power, as an energy source for example, against its dangers, such as the inherent risk of radiation. The courts are not free to reconsider the wisdom of this decision. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 557–58, 98 S.Ct. 1197, 1218–19, 55 L.Ed.2d 460 (1978). In light of the deliberate choice to develop nuclear energy despite the inherent risk of radiation, we are

7. Other courts have rejected similar arguments that the Ninth Amendment embodies a fundamental right to a contamination-free environment. *See Gasper v. Louisiana Stadium & Exposition Dist.,* 418 F.Supp. 716, 721–22 (E.D.La. 1976) (tobacco smoke), *aff'd,* 577 F.2d 897 (5th Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979); *In re "Agent Orange" Product Liability Litigation,* 475 F.Supp. 928, 934 (E.D.N.Y.1979) (chemical defoliant).

unable to conclude that a right to an environment free of any non-natural radiation is so "deeply rooted in this Nation's history and tradition," as to render it fundamental. The district court, therefore, did not err in dismissing CCN's Ninth Amendment claims.

### 3. *Equal Protection*

■ CCN additionally asserts that the district court erred in dismissing its claims alleging that the failure of the NRC and NDEC performance standards to require zero-release of radiation from the Boyd County facility violates the equal protection rights of the members under the Fifth and Fourteenth Amendments, respectively. NRC regulations require that high-level radioactive waste be disposed of in deep underground geologic repositories and that containment of the waste be substantially complete for 300 to 1,000 years. 10 C.F.R. §§ 60.101, 60.113 (1992).[8] The NDEC has no regulations concerning the disposal of high-level waste. In contrast, NRC and NDEC regulations permit low-level waste to be disposed of in near-surface facilities and do not require zero-release of radiation. 10 C.F.R. §§ 61.7, 61.41 (1992); Neb.Admin.R. & Regs. tit. 194, ch. 2, §§ 001–002 (1987); *id.* ch. 4, §§ 001–002 (1988). Thus, persons living next to low-level waste facilities actually may be exposed to higher levels of radiation than those living next to high-level facilities. CCN claims that this disparate treatment of similarly situated groups violates the equal protection guarantees of the Constitution.

Even if we were to agree that persons living near low-level radioactive waste facilities and persons living near high-level facilities are similarly situated for the purpose of equal protection analysis, we do not believe that the district court erred in dismissing CCN's claims. Because CCN's members do not have a fundamental right to be free from non-natural radiation, the federal and state governments only need to articulate a rational basis for the distinction between disposal requirements for low-level radioactive waste and high-level waste.[9] *See, e.g., Bowen v. Gilliard,* 483 U.S. 587, 600–01, 107 S.Ct. 3008, 3016–17, 97 L.Ed.2d 485 (1987) (citing *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)). The federal and state regulations explain that radioactive waste is classified for disposal based on the type and concentration of radionuclides it contains. The requirements for disposal are based on the particular dangers each class of waste presents. *See* 10 C.F.R. §§ 61.7(b), 61.55 (1992); Neb.Admin.R. & Regs. tit. 194, ch. 5, § 006 (1987). These regulations reflect the view that the greater danger presented by high-level waste to the environment and human health justifies the expense of additional precautions against radiation leakage. We have reviewed the regulations and find the bases for distinguishing between various classes of waste and imposing different disposal requirements for each class rationale. Although the regulations may not require the uniform containment of radioactive waste, it is well-established law that the government is not required to eliminate all evils at the same time or in the same manner. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). As such, the district court did not err in dismissing CCN's equal protection claims.

### III. CONCLUSION

We reverse the district court to the extent that it found jurisdiction to consider CCN's essentially statutory challenge to certain NRC regulations. As to the remainder of CCN's claims, we affirm the district court's dismissals.

---

**8.** Under EPA regulations, such facilities must be capable of minimizing radiation leakage for at least 10,000 years. 40 C.F.R. § 191.13 (1991).

**9.** Although the NDEC does not have any regulations governing the disposal of high-level radioactive waste, we will assume arguendo that the NDEC regulations still treat the disposal of high-level radioactive waste differently than that of low-level waste.